**Robert and Joyce SOSKA, Appellants**

**v.**

**Robert W. and Kelly BISHOP.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 5, 2010.

Decided March 18, 2011.

Reconsideration Denied May 18, 2011.

Walter T. Grabowski, Wilkes–Barre, for appellants.

Mark W. Bufalino and John G. Dean, Wilkes–Barre, for appellees.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge COHN JUBELIRER.

Robert and Joyce Soska (the Soskas) appeal the March 8, 2010, Order of the

Court of Common Pleas of Luzerne County (trial court) that dismissed the Soskas' exceptions to the Report of the appointed Board of Viewers (Board). Pursuant to the act commonly known as the Private Road Act (Act),[1] the Board denied the Soskas' request that a private road be opened over the land of their neighbors, Robert W. and Kelly Bishop (the Bishops). The Soskas assert that the Board erred and/or abused its discretion by refusing to open a private road over the Bishops' property and showing bias and ill will against them.

The Soskas own 1.2 acres in Exeter Township, Luzerne County (the Property), which they acquired by two deeds. (Stipulations III and IV, Report at 4; Deed dated October 28, 1988, Soska Ex.–2, and Deed dated April 28, 1989, Soska Ex.–1, Reproduced Record (R.R.) at 173a–78a.) The Soskas and the Bishops stipulated that the Property abuts a public county road, Sutton Creek Road, and that there currently is a driveway on the Property that the Soskas use to access Sutton Creek Road from their residence. (Stipulation III, Report at 4.) The Bishops own approximately forty-three acres also in Exeter Township; on that property is a private road, Barn Road, which provides access from the Bishops' property to State Road 1031, more commonly referred to as Mt. Zion Road. (Stipulation V, Report at 4.) Barn Road runs 435.5 feet over the Bishops' property between Mt. Zion Road and the east-west boundary between the Bishops' property and the Property. (Stipulations VI and VIII, Report at 5.)

The Soskas filed a Petition for the Appointment of a Board of Viewers to Open a Private Road (Petition), requesting the appointment of a Board to evaluate opening a "right-of-way across the land of [the Bishops] over the existing roadway [Barn Road] or another roadway across [the Bishops'] lands." (Petition ¶ 7, Supplemental Reproduced Record (S.R.R.) at 2b.) The Soskas asserted that there was a "clear necessity" for the right-of-way to provide them with "reasonable access to and from [Mt. Zion Road]." (Petition ¶ 7, S.R.R. at 2b.) The Soskas further claimed that they "have no reasonable or practical access from their land to Sutton Creek Road because of the terrain and elevation of their driveway extending from their residence to Sutton Creek Road." (Stipulation VII, Report at 5; see also Petition ¶ 5, S.R.R. at 2b.) The trial court appointed the Board, which, after providing timely notice, met with the parties and their counsel in August 2005. Although the Board accepted brief statements from counsel, it did not take testimony or accept evidence. *Soska v. Bishop*, No. 711 C.D. 2006, 923 A.2d 1271 (Pa.Cmwlth. May 3, 2007), slip op. at 2 (*Soska I*). Thereafter, the Board performed an in-person inspection of the properties in question, which included viewing and walking over the Property, the Property's present access to Sutton Creek Road, and Barn Road. *Id.*, slip op. at 4. After its site view, the Board determined that the Soskas had access, ingress and egress, to Sutton Creek Road from the Property and that the opening of a private road was not necessary. *Id.* Therefore, the Board recommended that the trial court dismiss the Petition with prejudice. *Id.* The Soskas filed exceptions with the trial court, which were denied, and filed an appeal with this Court claiming, *inter alia*, that the Board erred when it failed to conduct a formal hearing in August 2005 or take any evidence or testimony regarding the reasonableness of their request. *Id.* This Court agreed, vacated the Board's decision and remanded

---

1. Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§ 2731–2891.

the matter for the Board to hold a proper hearing, at which the parties could present evidence and testimony in support of their positions. *Id.*, slip op. at 8–9.

On remand, the Board held a hearing on April 25, 2008, during which the parties presented evidence. Noting that it was not bound by the formal Rules of Evidence, the Board afforded the parties wide latitude with regard to their evidentiary offerings.[2] Mr. Soska testified that, when they first purchased the Property, they used Barn Road to access Mt. Zion Road, believing that they had an easement to do so. Mr. Soska agreed that, when he first purchased the Property in 1988, he asked Mr. Bishop to sign an agreement allowing the Soskas to use Barn Road, and Mr. Bishop would not sign the agreement. The Soskas continued to use Barn Road until the Bishops blocked the road approximately three years after the Soskas began constructing their home in 1989. It was at that time, according to Mr. Soska, that his wife had the current driveway "cut" to allow access from the Soskas' residence to Sutton Creek Road. Mr. Soska indicated that he was away from home at that time and that his wife hired a neighbor to bulldoze the driveway to provide the Soskas access to Sutton Creek Road. Mr. Soska testified that he must use a four-wheel-drive pickup truck to get from his residence to Sutton Creek Road via the existing driveway. He explained that coal trucks and UPS will not deliver to the residence and that, at one time, an ambulance would not drive up the driveway. According to Mr. Soska it is extremely difficult to use the driveway in the wintertime, when he has to put chains on his four-wheel-drive truck, and that when there are heavy rains he must fill in dirt that has been washed away by the rain.

Mr. Soska acknowledged that he has done nothing to improve the driveway, believing that it would be a waste of money, and that he has not investigated the cost to rehabilitate or improve the driveway since it was cut.

The Soskas also presented the testimony of Glenn Johnson, a professional land surveyor, and Thomas J. Reilly, a registered engineer with expertise in road work. Mr. Johnson testified that he surveyed and prepared a survey map of the Property. Mr. Johnson confirmed that Barn Road was located on the Bishops' property and indicated that he did not recall ever seeing the Soskas drive on their driveway. The Board admitted Mr. Johnson's survey map of the Property into evidence, but noted that the map incorrectly signified that the Soskas had the right to use Barn Road. Mr. Reilly stated that he was familiar with the Property, had driven up the driveway from Sutton Creek Road in his four-wheel-drive SUV, had performed studies of the driveway to determine its slope and curvature, and drafted a report based on those studies. Mr. Reilly indicated, both in his testimony and his report, that the driveway, in its present form, was constructed sometime after 1992. Mr. Reilly opined that the grades of the driveway, ranging from 2% to 30%, did not conform to the Exeter Township Subdivision Ordinance and Land Development Ordinance (Ordinance), which cannot exceed 10%. In Mr. Reilly's opinion, the driveway did not comply with "generally-accepted engineering standards" as to grades or curves. (N.T. at 48, R.R. at 50a.) Mr. Reilly took photographs of the driveway and of Barn Road, which were admitted into evidence.

The Soskas attempted to introduce the testimony of Alan J. Rosen, a real estate appraisal expert, who was going to testify

---

**2.** We appreciate the Board's efforts in holding such an in-depth remand hearing and accept-

ing evidence that will assist this Court in performing its appellate review.

regarding the cost of opening Barn Road for the Soskas' use. The Bishops objected to Mr. Rosen's testimony on the grounds that it went to the damages that would be incurred in the taking of the Bishops' property for an easement. The Bishops asserted that, because the procedures for opening a private road under the Act are bifurcated, in that the Board must first determine whether there is a necessity for the opening of a private road and the location of the road before damages can be determined, Mr. Rosen's testimony was not relevant, helpful, or allowable during the "necessity" stage of the proceedings. The Board agreed, sustained the Bishops' objection, and precluded Mr. Rosen from testifying.

Mr. Bishop testified that he and his wife own Barn Road and explained that he allowed the Soskas to use Barn Road while they were constructing their residence because heavy equipment and lumber trucks would be travelling from Mt. Zion Road to the Soska residence. According to Mr. Bishop, he allowed the Soskas to use Barn Road for about three years and then he blocked the road, noting that the Soskas continued to use Barn Road even after construction on their residence was completed. Mr. Bishop testified that, after he blocked Barn Road on several occasions, the Soskas had a neighbor "cut" the current driveway from the Soskas' residence to Sutton Creek Road. Mr. Bishop indicated that he has observed as many as four different vehicles using the driveway and stated that many homes in Exeter Township are built high above road level, which necessarily results in some steep driveways between residences and public roads.

The Bishops also offered the testimony of George M. Albert, a licensed civil engineer, who visited the Property and drafted a "schematic" describing a way in which the Soskas could rehabilitate or recon-struct their driveway. Mr. Albert recalled the elevation of the Property from Sutton Creek Road, indicating that the grade change between the residence and Sutton Creek Road was between eighty and ninety feet and that, gauging a straight line slope, the grade of the Property was approximately 40%. Mr. Albert opined that the driveway could be lengthened to achieve a flatter grade and that the cost for reconstructing or rehabilitating the driveway would be around $24,000. Mr. Albert, who works for the firm that serves as Exeter Township's engineer, reviewed Mr. Reilly's report and indicated that, when the Soskas purchased the Property, there was no ordinance in effect that would have prohibited them from rehabilitating their present driveway and that the acceptable engineering standards Mr. Reilly was relying on were for "roadway design," not the construction of private driveways. (N.T. at 119–20, R.R. at 121a–22a.) Mr. Albert stated that the Soskas have access to Sutton Creek Road from their residence via the driveway, but he acknowledged that such access was not particularly safe and that the Soskas had to be careful because of the contour and elevation of the driveway. He also indicated, however, that the access could be made "reasonably passable and practicable" by rehabilitating the driveway. (N.T. at 129–33, R.R. at 131 a–35a.) On cross-examination, Mr. Albert acknowledged that his schematic was "based on the principle of extending rise over run," (N.T. at 126–27, R.R. at 128a–29a), that he had an approximation of the radii involved in the driveway schematic, but did not actually compute the radius of any of the turns or the actual grades of the schematic on the exhibit. Further, he indicated that he calculated the $24,000 cost based on the estimated lineal footage of the proposed driveway and the cost of preparing the Property, surfacing the

roadway, and purchasing guide rails. (N.T. at 127–28, R.R. at 129a–30a.)

Having reviewed this testimony, the Board determined that it was appropriate for it not to consider Mr. Reilly's testimony regarding when the Soskas' driveway was "cut," that the driveway constructed at that time did not conform with the present standards regarding curves and grades set forth in the Ordinance, and that the driveway was not constructed according to "generally-accepted engineering standards" because these things were clearly observable from the Board's walkover of the Property. (Report at 13.) The Board considered Mr. Reilly's testimony, for the most part, "not appropriate" for this case because there is no subdivision plot plan for a development on the Property. (Report at 13–14.) The Board noted that Mr. Albert admitted that the Soskas had access from the Property to Sutton Creek Road, although he indicated that such access could be made more efficient for use at some cost. (Report at 14.) With regard to Mr. Johnson's survey map, the Board concluded that, while the map was useful to the Board, it could not replace the Board's actual onsite walk-over of the Property in 2005. (Report at 14.) The Board concluded that it was clear from the testimony that the Soskas have been using the driveway to access Sutton Creek Road since it was constructed in 1993, after they were prohibited from using Barn Road. (Report at 14.) The Board held that, although the Soskas may find using their driveway in its current condition burdensome and inconvenient, this is not the test required by the Act to allow for the opening of a private road. (Report at 14.) Moreover, the Board noted that the Soskas have done nothing on their own

to improve or rehabilitate their driveway, instead choosing to engage in litigation with the Bishops in order to allow them to use Barn Road.[3] (Report at 15.) Accordingly, based on its view of the Property and the refreshment of its recollection by the testimony and evidence submitted by the parties, the Board found that the opening of a private road in this matter was not "a strict necessity or necessary under all the facts and circumstances of this case." (Report at 15.) The Board further explained that reasonable ingress and egress has been and continued to be available from the Soskas' residence to Sutton Creek Road via the driveway and that, with relatively minor modification of the driveway and the reasonable expenditure of funds, this access would be made less burdensome and more convenient. (Report at 16.) Accordingly, the Board recommended denying the Petition and dismissing it with prejudice.

◼ The trial court confirmed the Board's Report on February 23, 2009, and entered a Decree Nisi. The Soskas filed exceptions with the trial court, which the trial court dismissed on March 8, 2010. In its opinion supporting that order, the trial court issued an opinion in which the trial court noted that the Soskas have been using the driveway to access Sutton Creek Road since 1993 and that Mr. Albert testified that this driveway could be upgraded by minor modification and with reasonable expenditure of funds. (Trial Ct. Op. at 2.) The trial court concluded that, given that the Act is subject to strict interpretation, particularly the concept of "necessity," and the trial court's inability to substitute its judgment for the Board's, the Board did not abuse its discretion in concluding that the requested opening was not of strict

---

**3.** The Board referred to both this action under the Act and an action in Equity the Soskas filed with the trial court in 1999, in which

they sought an easement for ingress and egress to Mt. Zion Road via Barn Road. (Report at 15.)

necessity because there was sufficient and clear evidence to support that finding. (Trial Ct. Op. at 2.) The Soskas now appeal to this Court.[4]

■ The Soskas first assert that the Board erred in finding that there was not strict necessity to open the private road where the evidence overwhelmingly supports the conclusion that the current driveway is "of limited privilege and extremely difficult and burdensome in its use." (Soskas' Br. at 11.) Specifically, the Soskas contend that this conclusion is supported by the testimony of Mr. Soska, Mr. Reilly, Mr. Johnson, and even Mr. Albert regarding the grade, curves, and condition of the Soskas' driveway. Additionally, the Soskas argue that the Board abused its discretion because the Board's findings are not supported by substantial evidence. In essence, the Soskas assert that the Board should have relied on the Soskas' evidence and not based its determination on its own view of the Property or Mr. Albert's testimony regarding the ability of the Soskas to modify or rehabilitate the driveway to render their driveway safer and less burdensome.

In response, the Bishops contend that the Soskas' claims of lack of reasonable access, based on the terrain and elevation of the driveway, were properly rejected by the Board. The Bishops point out that the Soskas have used the driveway for access to Sutton Creek Road since 1993 and that such access was reasonable. According to the Bishops, the Soskas' reliance on their witnesses' testimony regarding the condition of the driveway is not dispositive to the determination of necessity based upon the terrain and elevation, particularly where there was accepted evidence established that the driveway could be made more convenient and less burdensome if the Soskas rehabilitated or modified their driveway. Further, to the extent that the Soskas challenge the Board's acceptance of Mr. Albert's testimony over the testimony of Mr. Reilly, the Bishops note that the Board's authority cannot be infringed upon by a court substituting its judgment for that of the Board.

■ Initially, we hold that the Board did not err or abuse its discretion in relying on Mr. Albert's opinions instead of Mr. Reilly's opinions. The Board is an independent tribunal, and its judgments and authority may not be infringed upon by a reviewing court in favor of that court's own judgments. *Mandracchia v. Stoney Creek Real Estate Corporation*, 133 Pa.Cmwlth. 510, 576 A.2d 1181, 1182–83 (1990); *In re Private Road in Monroeville Borough*, 204 Pa.Super. 552, 205 A.2d 885, 887 (1965), *superseded on other grounds as recognized in Beers v. Raub*, 363 Pa.Super. 521, 526 A.2d 801, 803 (1987). The reviewing court may not look beyond the record or review the facts. *Mandracchia*, 576 A.2d at 1183. Because the Board is the fact finder, its judgments, including its determinations as to credibility of witnesses and weight of the evidence, is beyond the scope of appellate review. *In re Rural Route Neighbors*, 960 A.2d 856, 860, 862 (Pa.Cmwlth.2008). Although Mr. Albert indicated that his schematic was based on the principle of

---

4. "In reviewing a Board of View's decision, '[a]ppellate review is limited to ascertaining the validity of the Board's jurisdiction, the regularity of proceedings, questions of law[,] and whether the Board abused its discretion.'" *In re Private Road in Speers Boro II,* — Pa. —, —, 11 A.3d 902, 905 (2011) (quoting *In re Packard*, 926 A.2d 557, 559 n. 2 (Pa.Cmwlth.2007)). An abuse of discretion occurs if the Board's decision shows "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Construction, Inc.*, 540 Pa. 409, 412, 658 A.2d 341, 343 (1995).

rise over run and that he did not do exact calculations of the grade and radii of the curves on the schematic, we conclude that such matters go to the weight of Mr. Albert's testimony. Accordingly, the Board could rely on that testimony, once credited, without erring or abusing its discretion.

 When reviewing a request to open a private road under the Act, we are cognizant that "the Act is in the nature of eminent domain and, therefore, must be strictly construed," *Graff v. Scanlan,* 673 A.2d 1028, 1031 (Pa.Cmwlth.1996), and "that taking property for private use is not favored," *In re Private Road in Speers Boro II,* ___ Pa. ___, ___, 11 A.3d 902, 906 (2011). "The word necessity, the key to this entire Act[,] must likewise be given a strict interpretation." *Graff,* 673 A.2d at 1031 (quoting *Application of Little,* 180 Pa.Super. 555, 119 A.2d 587, 589 (1956)). Under these principles, our courts have construed the term "necessity" "as requiring the 'strictest necessity.'" *Id.* (quoting *Little,* 119 A.2d at 589; citing *In re Road in Plum Creek Township,* 110 Pa. 544, 548, 1 A. 431, 433 (1885) (stating that "the taking of property for private use is an assumption that is *prima facie* unconstitutional, and can only be justified by the strictest necessity")). Within these guidelines, "a board of viewers generally has broad authority under the Act to determine whether a private road is necessary." *Graff,* 673 A.2d at 1031. The "Act does not require an absolute necessity, such as being completely landlocked"; however, "the mere inconvenience in the use of an existing road is not enough." *Id.* at 1033. Rather, "[t]he existing road must be of a limited privilege"[5] or " 'extremely difficult and burdensome' in its use ... to warrant the appropriation of another more convenient course." *Id.* (quoting *Little,* 119 A.2d at 589.) The Act's purpose is to provide a landowner with adequate access to use and enjoy his or her property. *Mazzante v. McClintock,* 976 A.2d 648, 652 (Pa.Cmwlth.2009). Whether necessity exists to open a private road "is a factual matter to be determined by the board and not the trial court, whose review is limited to the confirmation or rejection of the board's report." *Id.* at 653. The trial court cannot consider questions of fact. *Id.*

This Court has previously addressed what constitutes the strictest necessity requiring the opening of a private road. For example, in *Mazzante,* the landowner had unobstructed access to his property from a public road, but sought the opening of a private road on a neighboring property claiming that the access **across** his property was "rough, eroded, extremely dangerous, difficult, burdensome, and so rocky that it cannot be traveled by a regular passenger vehicle and would be extremely cost-prohibitive to improve." *Mazzante,* 976 A.2d at 650. We rejected this argument because the cases on which the landowner relied involved properties

> that [were] otherwise landlocked [and] had existing access across lands of others but that access was claimed to be

---

5. The phrase "of limited privilege" refers to limitations such as: having an "irrevocable license" to an existing right-of-way where such license does not run with the land, *In re Laying Out and Opening a Private Road,* 405 Pa.Super. 298, 592 A.2d 343 (1991); an easement that grants access only during haying time and for the single and only purpose of cutting and removing hay, *Graff,* 673 A.2d at 1033 n. 7 (citing *Kraft's Petition,* 33 Lanc.Rev. 386 (C.P.Pa.1916)); or a right-of-way that continues only until they "shall secure a private or public road direct to said lands from their premises," *Stewart's Private Road,* 38 Pa.Super. 339, 1909 WL 3782 (1909). Although the Soskas maintain that their driveway is "of limited privilege," (Soskas' Br. at 11), there does not appear to be any limitation on their use of their driveway either in manner or time of use.

extremely difficult or burdensome or dangerous in its use, thereby justifying a grant of a different private road. **Such cases do not establish a principle that whenever an owner alleges that a road across his or her property is difficult or burdensome to use that the owner has shown entitlement to appointment of a board of view[ers] under the Act.** . . . . [H]ere, [the landowner] has admitted to a degree of access across his property but wishes to avoid the expense that would be required to improve that access. [S]uch desires do not rise to the level of "strictest necessity" that is required under the Act.

*Mazzante,* 976 A.2d at 654–55 (emphasis added).

Similarly, in *In re Private Road in Union Township,* 148 Pa.Cmwlth. 522, 611 A.2d 1362 (1992), we addressed a situation where a landowner had access on his own property, but that access was blocked by a natural feature. In that case, a board of viewers granted the opening of a private road to the landowner where the property was split by an eighty-foot to one hundred-foot deep, several hundred-foot wide ditch. *Id.* at 1363. We affirmed the board of viewers' opening of the private road as necessary, even though the landowners had an easement to go over another property, because the easement was limited in size and use and because the cost of constructing a bridge over the ditch would be prohibitive. *Id.* at 1364.

Similar to the landowners in *Mazzante,* the Soskas admit that they have access across the Property to Sutton Creek Road via the current driveway. Mr. Soska testified that they do, in fact, use that driveway to access Sutton Creek Road, and all of the witnesses agreed that the Soskas have access to a public road. What the Soskas seek is a more convenient, less difficult means of accessing a public road from

their residence. However, instead of inquiring into how to improve the access they previously constructed across their own Property, as Mr. Soska admits has never occurred, (Hr'g Tr. at 111, R.R. at 113a), the Soskas seek access over the Bishops' property. Essentially, in requesting that Barn Road be opened as a private road without ever looking into the cost of improving their own access, the Soskas, like the landowner in *Mazzante,* attempt to avoid any of the costs associated with improving the driveway that they constructed upon their Property. The Soskas' use of their driveway is difficult because of deterioration and improper construction; however, without attempting to rehabilitate or improve the driveway, they cannot rely on that deterioration as the basis for requesting the opening of Barn Road for their use.

Additionally, although the Property's physical features have caused difficulties in the Soskas' access to Sutton Creek Road, this matter is not akin to *Union Township.* First, the Soskas' Property is not cut in half by a large physical feature, such as the ditch in *Union Township.* Rather, the current access is hindered by steep grades and sharp curves, which Mr. Albert credibly testified could be rehabilitated. Second, there is no legal limitation on the Soskas use of their own driveway, such as the restricted easement that prevented the property owner in *Union Township* from using its already-existing legal access across a different neighbor's property. Third, the Board concluded that the cost to rehabilitate or reconstruct the driveway in this matter was reasonable. (Report at 16.) The Soskas presented no evidence to contradict this conclusion other than to say, "to spend money on that road would be ridiculous. Why don't I just burn my . . . money," (Hr'g Tr. at 110, R.R. at 112a), and that "it would be a waste of

money to try to improve that road," (Hr'g Tr. at 111, R.R. at 113a). This certainly is not the same as the property owner's evidence that building a bridge across the aforementioned ditch in *Union Township* was cost prohibitive.

The Soskas also argue that the Board erred in not allowing Mr. Rosen to testify regarding the damages that would result from the opening of Barn Road. According to the Soskas, the Board erred in concluding that such testimony was not relevant to this stage of the proceedings, i.e., the determination of necessity, because there is no authority that the proceedings to open a private road should be bifurcated. However, in *In re Brinker*, 683 A.2d 966 (Pa.Cmwlth.1996), this Court stated that the "initial proceedings to open (i.e., condemn) private roads and **subsequent proceedings to assess damages** for the taking are distinct and require separate analyses." *Id.* at 969 (emphasis added). "Common Pleas is required to determine all legal issues relating to the 'necessity' of the taking of another's land for private use before the damages to be paid can be assessed." *Id.* at 970. Accordingly, we conclude that the Board did not err or abuse its discretion in not allowing Mr. Rosen to testify regarding the damages where there had not yet been a determination as to the necessity of the requested private road.

Similarly, the Soskas contend that the Board erred by not finding that the only logical, alternative location for the private road to access the Property was Barn Road. However, we agree with the Bishops that such a finding would be moot in this matter. Because the Board did not find that there was strict necessity for the opening of a private road, there was no need to determine the location of the requested private road. Thus, the Board did not err by not making a finding regarding the appropriate location for a private road that it did not approve.

The Soskas finally assert that, throughout the proceedings, the Board displayed bias and ill will against them. Citing to the delay associated with the hearings on the Petition, the Board's "offhand" dismissal of Mr. Reilly's testimony and acceptance of Mr. Albert's unsupported speculation regarding the nature and cost of improvements to the driveway, and the Board's "snide comments" throughout the proceedings, the Soskas assert that the Board was not impartial and that it only went through the motions because this Court so ordered. (Soskas' Br. at 18–19.) We agree with the Bishops, however, that the Soskas have waived this issue because they failed to include it in their exceptions filed with the trial court. Pursuant to Pennsylvania Rule of Appellate Procedure 302(a), "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." Our review of the Soskas' exceptions reveals no specific or implied references to the allegations of bias or ill will that the Soskas now raise in their appeal to this Court. (Soskas' Exceptions, S.R.R. at 13b–18b.) Accordingly, this issue is waived.[6] Pa. R.A.P. 302(a).

6. Even if it were not waived, we would conclude that the Board did not exhibit bias, ill will, or partiality in this matter. The Board clearly allowed both parties great leeway to present their cases and evidence during the hearing, specifically noting that it was not bound by the formal Rules of Evidence. The Soskas cite the delay in this matter as evidence of the Board's bias or ill will. However, at least eight months of that delay was attributable to the trial court, which did not enter a decree confirming the Board's June 6, 2008, Report until February 23, 2009. Further, with regard to the Board's dismissal of Mr. Reilly's testimony, the Board is the finder of fact and it concluded that many of the things to which Mr. Reilly testified were apparent from the Board's onsite walkover of

In sum, given that the taking of "property for private use is not favored," *In re Private Road in Speers Boro II*, —— Pa. at ——, 11 A.3d at 906, we conclude that, under these circumstances, the Board did not err or abuse its discretion in holding that the opening of a private road was not of the strictest necessity and, accordingly, the trial court did not err in confirming the Board's Report. Accordingly, we affirm the trial court's Order.

### ORDER

NOW, March 18, 2011, the Order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby **AFFIRMED**.

the Property and there were no plans to develop or subdivide the Property. The Board provided reasons for its decision that do not seem "off-hand" to this Court. Finally, regarding the alleged "snide comments" made during the hearing and in the Report, we conclude that there were no such comments. Although the tone may not have been as we would use, we conclude that the Board did not exhibit bias, ill will, or partiality.