**IN RE: LAYING OUT AND OPENING OF PRIVATE ROAD IN HAZLE TOWNSHIP.**

**Appeal of: Stephen Perchak, James Perchak, Michael Perchak, Josephine Perchak and Donald E. Walp.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 2011.

Decided Jan. 27, 2012.

Thomas L. Kennedy, Hazleton, for petitioners Stephen Perchak, James Perchak, Michael Perchak and Josephine Perchak.

John M. Gallagher, Hazleton, for respondents Leonard Brenner and Paul Brenner.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and BROBSON, Judge (P.).

OPINION BY Judge COHN JUBELIRER.

Stephen Perchak, James Perchak, Michael Perchak, Josephine Perchak (collectively, Perchaks) and Donald E. Walp (Walp) (together with Perchaks, Neighbors) appeal from the Order of the Court of Common Pleas of Luzerne County (trial court) that granted the exceptions of Paul Brenner and Leonard Brenner (together, Brenners) from the Report of the Board of Viewers (Board), which denied Brenners' petition to open a private road across Perchaks' property (Petition).[1] Neighbors argue that the trial court erred in: (1) reversing the Board because it correctly considered the possibility of access to Brenners' property (the Property) by an implied easement over a different neighboring property; and (2) considering only what access was strictly necessary to reach the Property, rather than the access necessary to develop the Property for its highest and best use.

Brenners purchased the Property, which comprises two parcels totaling approximately 34.57 acres, from Mt. Laurel Memorial Park, Inc. (Mt. Laurel Park). The transfer left the Property without connection to a public road or highway. Around the time of the transfer, Brenners contracted with Perchaks for an easement over Perchaks' property to a private right-of-way on Perchaks' property known as Transportation Drive, which connects to PA Route 309 and services Perchaks' trucking business and a business owned by Walp. This easement was conditioned on the use of the Property as a scrap yard. The Property is located in a B1 zoning district, where a scrap yard is not a use permitted as of right. Brenners sought a variance from the Hazle Township Zoning Authority (Authority) to operate a scrap yard on the Property. The Authority denied the variance and this Court affirmed the Authority's decision.

Thereafter, on October 16, 2009, Brenners petitioned the trial court to appoint the Board pursuant to the Act commonly known as the Private Road Act[2] (the Act). The trial court appointed the Board, which

---

1. This Court granted Neighbors permission to appeal by Order dated April 1, 2011, pursuant to Neighbors. Petition for Permission to Appeal filed with this Court on March 1, 2011.

2. Act of June 13, 1836, P.L. 551, *as amended,* 36 P.S. §§ 2731–2891.

held three hearings on Brenners' Petition. The Board received evidence, including the Engineering Evaluation of Alternate Routes From S.R. 309 to Lands Owned by Leonard and Paul Brenner prepared by Schumacher Engineering, Inc. (Schumacher Report), which Brenners offered into evidence, and the Engineering Report for Easement Routes A and B From S.R. 309 to Lands Owned Now [or] Formerly by Leonard and Paul Brenner, prepared by J.T.B. Surveying and Engineering, which Neighbors offered into evidence. The parties also entered a number of deeds into evidence. While there appears to have been testimony before the Board, this testimony was not transcribed.

The Board issued its Report and determined that the private road sought by Brenners "is not for purposes of merely gaining access to their clearly landlocked land, but is designed to permit them to develop the [Property] in conformity with the B1 zoning classification assigned to the area in which their land is located." (Board Report at 2.) The Board stated that the testimony of John G. Synoski, P.E., who prepared the Schumacher Report, indicates that Brenners contemplated a road that would comply with the standards set by Hazle Township and the Department of Transportation, not merely a road that would meet the bare necessity of accessing the Property. (Board Report at 2–3.) The Board stated that, under the circumstances of the case, Brenners were not entitled to a private road under the Act that would facilitate the highest and best use of the land when it appeared that an easement by necessity should be available through the property of Mt. Laurel Park, which contributed to the landlocked nature of the Property in its conveyance. (Board

Report at 3.) The Board, therefore, denied Brenners' Petition.

Brenners filed exceptions to the Board's Report. The trial court granted Brenners' exceptions and remanded the matter to the Board to determine the precise placement of and compensation for the private road. The trial court determined that it was not within the Board's power to "determine whether implied easements exist" and that "the sole purpose of the Board, once it determines that Petitioner is landlocked, is to lay out the road *in the place petitioned,* making any adjustments necessary." (Trial Ct. Order at 1–2 (emphasis added).) Neighbors now appeal to this Court.[3]

We first address Neighbors' argument that the trial court erred in holding that the Board should disregard the potential implied easement by necessity over the property of Mt. Laurel Park in determining that a private road over Perchaks' property was necessary under the Act. Section 11 of the Act provides:

[t]he several courts of quarter sessions shall, in open court as aforesaid, upon the petition of one or more persons, associations, partnerships, stock companies, or corporations, for a road from their respective lands or leaseholds to a highway or place of necessary public resort, or to any private way leading to a highway … direct a view to be had of the place where such road is requested, and a report thereof to be made.

36 P.S. § 2731. Section 12 of the Act provides that:

[i]f it shall appear by the report of viewers to the court directing the view, that such road is necessary, the said court shall direct what breadth the road so reported shall be opened, and the

---

**3.** This Court's review of the Board's decision "is limited to ascertaining the validity of the Board's jurisdiction, the regularity of proceedings, questions of law and whether the Board abused its discretion." *In re Packard,* 926 A.2d 557, 559 n. 2 (Pa.Cmwlth.2007).

proceedings in such cases shall be entered on record, as before directed, and thenceforth such road shall be deemed and taken to be a lawful private road. 36 P.S. § 2732. "When reviewing a request to open a private road under the Act, we are cognizant that 'the Act is in the nature of eminent domain and, therefore, must be strictly construed.'" *Soska v. Bishop*, 19 A.3d 1181, 1188 (Pa.Cmwlth. 2011) (quoting *Graff v. Scanlan*, 673 A.2d 1028, 1031 (Pa.Cmwlth.1996)). The term "necessary" in Section 12 is key to the entire Act and "'must likewise be given a strict interpretation.' As such, our courts from early in the history of the Act have construed it as requiring the 'strictest necessity.'" *In re Private Road in Speers Boro, II*, 608 Pa. 302, 308, 11 A.3d 902, 906 (2011) (quoting *Graff*, 673 A.2d at 1031).

In *Graff*, this Court considered a trial court's order denying the exceptions to a report of a board of viewers where the neighboring landowners objected to the opening of a private road over their properties on the bases that an implied easement by necessity existed over land previously conveyed by the landlocked landowners and the landowners had caused the landlocked status of their property. This Court considered the factors necessary to create an easement by necessity, discussed below, and determined that one existed. *Graff*, 673 A.2d at 1032–33. This Court, therefore, determined that the board of viewers in that case erred in not considering the implied easement by necessity. *Id.* at 1033. Rather than remand to the board of viewers, however, this Court held that the landowners in *Graff* had caused their land to become landlocked and "that

landowners who *voluntarily* create their own hardship are precluded from condemning a private road over the land of others pursuant to the provisions of the Act." *Id.* (emphasis in original).

█ Here, unlike the board of viewers in *Graff*, the Board did consider whether an implied easement by necessity existed, determined that one did, and took this into consideration in making its Report. While the Board does not have the power to quiet title and make a determination binding on the affected landowners as to whether an easement by necessity exists, it is not error for a board of viewers to consider whether it appears likely that an easement by necessity exists. The potential existence of such an easement is relevant to the question of whether a private road is strictly necessary.

█ In order to establish an easement by necessity, a party must show that: (1) the titles to the allegedly dominant and servient properties were held by one person; (2) this unity of title was severed when one of the properties was conveyed; and (3) the easement is necessary for the owner of the dominant property to use his land, with such necessity "existing both at the time of the severance of the title and at the time of the exercise of the easement." *Graff*, 673 A.2d at 1032 (quoting 11 Am.Jur. Proof of Facts 3d 601, Way of Necessity § 3.) In this case, it appears[4] that these elements are satisfied with respect to the Property and the property of Mt. Laurel Park.

With respect to the first element, the deeds conveying the parcels composing the Property from Mt. Laurel Park to Brenners and Joseph Brenner[5] indicate that

---

4. The issue of whether there is, in fact and as a matter of law, an easement by necessity over the property of Mt. Laurel Park is not

before this Court. Mt. Laurel Park is not a party to this action.

5. Joseph Brenner conveyed his interest in the Property to Brenners by deed dated Septem-

the Property was once held by Mt. Laurel Park. (Indenture, October 31, 1991, at 1, R.R. at 56a; Indenture, December 26, 1990, at 1, R.R. at 58a.) Likewise, with respect to the second prong, these deeds make clear that they sever title between the Property and Mt. Laurel Park's remaining property. With regard to the third prong, there is no dispute that the Property is currently landlocked and without access to a public road or highway; therefore, necessity currently exists for an easement by necessity over Mt. Laurel Park's lands. Brenners make no argument that such necessity did not exist at the time the Property was conveyed. Therefore, it appears that there may be an easement by necessity available to Brenners over Mt. Laurel Park's property.

Brenners argue that:

[w]hile the Brenners may have the right to seek and obtain by judicial means, an easement by necessity somewhere over the common parcel [owned or previously owned by Mt. Laurel Park], they do not currently have one in place, and there is no way to know that even if Brenners would petition the [trial court] for such an easement, it would be granted.

(Brenners' Br. at 6.) While it is true that an easement by necessity has not been judicially declared, it does appear, as noted above, that Brenners would likely be successful if they sought one. There is no dispute that Brenners made no attempt to secure such an easement before seeking to proceed under the Act. As in *Graff,* the issue of whether an easement by necessity may exist, even if not yet judicially established, is relevant to the issue of whether a private road is strictly necessary. *Graff,* 673 A.2d at 1033. Therefore, we hold that the Board did not err in considering whether the possible easement of necessity rendered the proposed private road over Perchaks' land not strictly necessary.

Because the private road requested by Brenners may not be strictly necessary, we hold that the Board did not err in denying Brenners' Petition. This Court, therefore, reverses the Order of the trial court.[6]

### ORDER

**NOW,** January 27, 2012, the Order of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby **REVERSED.**

ber 1, 1993. (Deed, September 1, 1993, R.R. at 62a.)

6. Due to our holding on this issue, we do not reach the issue of whether Brenners would have been entitled to a private road that would allow the highest and best use of the Property. We would note that, as discussed above, strict necessity is the key to obtaining the opening of a private road under the Act. *Speers,* 608 Pa. at 308, 11 A.3d at 906. Courts have held that *access* to a property may be so adequate as to negate strict necessity, even if that access is not *ideal* or least costly. *See, e.g., Speers* (holding that the Monongahela River might be adequate access to a property zoned for heavy industry); *Soska* (holding that a driveway granting access to a residential property provided adequate access despite being steeply graded in places and difficult to traverse). The Schumacher Report only discusses the right-of-way necessary to construct a road for a mixed commercial/retail development. Brenners presented no evidence to the Board regarding what sort of access might be adequate for a less intense use of the Property.