# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mt. Lebanon Cemetery Co.,           :
                    Appellant       :
                                    :
            v.                      :
                                    :
Board of Property Assessment,       :
Appeals and Review                  : No. 2245 C.D. 2014
                                    : Argued: November 17, 2015
            v.                      :
                                    :
Mt. Lebanon School District, Township :
of Mt. Lebanon and County of        :
Allegheny                           :


BEFORE:    HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
           HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE COLINS**                    **FILED:  January 28, 2016**


          Mt. Lebanon Cemetery Company (Cemetery) appeals the November 17, 2014 order of the Court of Common Pleas of Allegheny County (Trial Court), which determined that neither Cemetery nor the taxing bodies had produced sufficient, competent, credible, and relevant evidence to overcome the *prima facie* validity of the assessments of the Board of Property Assessment, Appeals and Review of Allegheny County (BPAAR), and therefore the fair market value of two parcels owned by Cemetery and located at 509 Washington Road, Municipality of Mt. Lebanon (Property) in the County of Allegheny (County) and within the

School District of Mt. Lebanon (School District), are those established by BPAAR.[1]  We affirm.

The Property consists of Lot & Block Numbers 141-C-100 (Parcel 1) and 141-C-100-01 (Parcel 2).  (Supplemental Reproduced Record (S.R.R.) at 252a-269a.)  Parcel 1 consists of 49.169 acres of land and improvements and Parcel 2 consists of 11.75 acres of unimproved land; the cemetery includes a mausoleum, maintenance shed, parking lots, paved paths, burial plots and other improvements related to its operation. (*Id*.) The assessed values of the two parcels as established by BPAAR for all of the tax years at issue are:

| Tax Years | Parcel 141-C-100 | Parcel 141-C-100-01 |
|---|---|---|
| 2003-2012 | $1,450,900 | $398,500 |
| 2013-2015 | $2,238,907 | $ 70,500 |

(County of Allegheny Disposition of Appeal from Real Estate Assessment, Reproduced Record (R.R.) at 10a.)[2]

Cemetery filed an appeal from the values established by BPAAR, and a hearing was held before the Allegheny County Board of Viewers (Board) on

---

[1] County records indicate that the owner of the for-profit cemetery is Mt. Lebanon Cemetery Company; however, the cemetery was sold in 1999, and the current owner is Stonemor Partners, L.P., a publicly traded company that owns 239 cemeteries and 89 funeral homes in various states and Puerto Rico.  (Reproduced Record (R.R.) at 24a-25a, 32a.)  Therefore, although the appeals have been in the name of Mt. Lebanon Cemetery Company, Stonemor Partners, L.P. is the real party in interest.

[2] In both Cemetery's 2003 appeal and in the 2013 Board Master's Report, the values determined by BPAAR in 2003 were stated as: $1,300,000 for parcel 141-C-100, and $241,800 for parcel 141-C-100-01.  However, property record cards reflect higher values assessed by BPAAR for the years 2003-2012, prior to a 2012 County Reassessment that was effective as of 2013, to be $1,450,900 for parcel 141-C-100 and $398,500 for parcel 141-C-100-01.  (Supplemental Reproduced Record at 262a, 268a.)

2

March 11, 2013, conducted by a Special Master. (3/11/13 Hearing Transcript (H.T.), R.R. at 15a-128a.) Following the hearing, on July 1, 2013 the Board issued its Report of Special Master (Board Master's Report), assessing the two parcels as follows:

| Tax Year | Parcel 141-C-100 | Parcel 141-C-100-01 |
| --- | --- | --- |
| 2003-2012 | $500,000 | $398,500 |
| 2013 | $500,000 | $ 70,500 |

(Board Master's Report), (R.R. at 129a-134a.) The School District filed Objections to the Board Master's Report, asserting that Cemetery failed to submit relevant, credible evidence sufficient to overcome the *prima facie* validity of the County assessment and that the Board erred when it failed to set forth its basis for reducing the assessed value of Property in its Board Master's Report. (Objections to Masters Report, R.R. at 135a-140a.) The Trial Court made its determination reinstating the BPAAR valuation and this appeal followed.[3]

Before the Board, Cemetery presented the testimony of Joseph J. Ward, Jr. (Ward), a certified public accountant and the tax manager at Cemetery. Ward did not file a report; the record consists of his testimony and exhibits he made part of the record. As noted by the Trial Court, his findings were based primarily on financial information and reflected in a one-page spread sheet. (Spreadsheet, R.R. at 203a.) Ward testified that he had no training or experience in

---

[3] This Court's review of tax assessment matters is limited to determining whether the trial court abused its discretion, committed an error of law, or reached a decision not supported by substantial evidence. *Masalehdan v. Allegheny County Board of Property Assessments, Appeals and Review*, 931 A.2d 122, 126 n.2 (Pa. Cmwlth. 2007). While the weight of the evidence is before the appellate court for review, the trial court's findings of fact are entitled to great weight and will be reversed only for clear error. *Green v. Schuylkill County Board of Assessment Appeals*, 772 A.2d 419, 426-427 (Pa. 2001).

appraisal of real property, but that he had reviewed appraiser information before and after the acquisition of Property, and he understood the regulations involved. (H.T., R.R. at 60a.) He stated that the cost approach and the sales comparison approaches to valuation do not apply to cemeteries because cemeteries cannot be replicated in practical terms and there is no comparable sale to the cemetery, so only the business line review can be employed for valuation purposes. (*Id.*) Ward testified that the cemetery business breaks the accounting rule that land always has value; he stated that in a cemetery, when the land is sold, it is gone and the land no longer belongs to the cemetery but to the decedent enshrined in that land. (*Id.*, R.R. at 29a.) He explained that fifteen percent of the value of the land sold is allocated to the Perpetual Care Trust Fund; the cemetery earns the interest and gains and/or losses off the investment into which the trust funds are placed so long as the interest exceeds the statutory minimum set by the Commonwealth. (*Id.*, R.R. at 29a-30a.) Ward indicated that the interest earned from the funds is used solely for the upkeep, maintenance, and beautification of the cemetery, and that as a for-profit company, Cemetery does not receive an exemption from property taxes on unsold portions of the cemetery. (*Id.*, R.R. at 31a-32a.)

Ward stated that there are approximately 2,500 unsold cemetery plots remaining, or approximately two and one-half acres; there are roughly 1,200 plots allotted per acre, assuming 800 surface plots, with half of them being able to be made into double depth plots; given the number of plots sold per year, there is an estimated 38-40 years of inventory remaining. (*Id.*, R.R. at 34a, 58a.) He testified that in addition, there are remaining: 21 cremation spaces (four years of inventory), 186 lawn crypt spaces (37 years of inventory), 848 mausoleum spaces

(56 years of inventory), 28 granite niches (14 years of inventory), and 30 glass niches (30 years of inventory).  (*Id*., R.R. at 78a-79a.)

Ward testified as to the spreadsheet he prepared, wherein he set forth values using the revenues from the business side of the Property as well as revenues from the sale of lots.  He stated that mausoleum space was not carried over to the land side of his spreadsheets, using the rationale that it is a liability to the cemetery as of the moment the first person is interred in a mausoleum, and therefore the building has zero value because of the ongoing liability attached to it. (*Id*., R.R. at 44a; Spreadsheet, R.R. at 203a.)  He explained that the line item "opening and closing," is representative of the revenue derived from the actual opening up of a grave, interment services conducted and the closing of a grave; this line item is shown on the business side, but not the land side of the spreadsheet. (R.R. at 48a; Spreadsheet, R.R. at 203a.)

Brian Patrick Kelly, a certified appraiser, testified for the School District.  Also using the income approach to valuation, Kelly stated that based on historical revenue, the gross income obtained from the year-ending 2011 was $692,767 for sales and $255,815 from other revenue; adjusted income was $253,767.  (*Id*., R.R. at 80a.)  Kelly stated that in order to derive a value, he capitalized the income based on sales of investments that occurred in the area; he established a base year 2002 value of $2,780,000 and explained that the information he analyzed was for 2009 through 2011 and revenue was "pretty consistent."  (*Id*., R.R. at 83a.) Kelly stated that cemetery expenses attributed to ordinary maintenance were presumed to be covered by the Perpetual Care Trust Fund. (*Id*., R.R. at 94a.)  On cross-examination, Kelly allowed that he derived his capitalization rates from properties bought not by single users but as leased

facilities with tenants paying rent, and that the comparables used can continue to develop and utilize the land, as distinguished from a cemetery. (*Id*., R. R. at 95a.)

The Board Master's Report indicates that at the hearing, the "property tax transcript (blotter) for the tax years in question were marked as Exhibit 'A' and admitted into evidence and the Board took judicial notice of the information contained thereon." (Board Master's Report, R.R. at 131a.) The Board Master's Report consists of just four pages, and concludes simply that having heard the quantity and quality of the evidence presented by all of the interested parties, and having considered all the testimony and the arguments of counsel, it is recommended that the fair market value of Property be fixed at $500,000 for Parcel 1 for the tax years 2003 through 2013, and at $398,500 for Parcel 2 for tax years 2003 through 2012 and $70,500 for tax year 2013. (*Id*., R.R. at 132a-133a.) The Board Master's Report made no further findings of fact nor did the report include any specific determinations as to the credibility of witnesses or weight of evidence. There is no indication in the report as to how the recommended fair market value was determined and neither Ward nor the School District's appraiser presented evidence to establish a fair market value of $500,000 for Parcel 1. However, Ward did respond as follows to a question as to how he might analyze Property to determine its purchase price at present, stating:

> Analysis would start with the number of spaces remaining of the facility which is roughly 2,500 land spaces which, for example, we will leave the mausoleum, niches off the table for the moment. We will trend it against the number of spaces sold over a given year so we would take a three- or five-year trend and see what the remaining life of the cemetery spaces were. Since we have approximately 70 to 80 spaces sold per year and 2,500 some spaces left, roughly 38 to 40 years of life left. We would be looking for how much we will have to take as interest from the bank for mortgage and/or other loan or

activity, trend it out, the present value of those numbers, add in inflation factor and rough number would come in – doing the math in my head is bad – the rough number that we've come up with is approximately a *half million dollars* for this property at this point in time.

(R.R. at 57a-58a.) (Emphasis supplied.)

In its 1925 opinion, the Trial Court noted that Cemetery provided no financial information with regard to years other than 2009, 2010, and 2011, and given the material differences for those three years in income, costs and expenses, they cannot serve as a proxy for the other years; thus, the Court stated, since Cemetery has not offered any evidence of the fair market value for the years 2003-2008 and for the years after 2011, it has no basis to question its ruling using the BPAAR-assessed values. (3/11/15 Memorandum Opinion (Trial Ct. Op.), R.R. at 200a.)

The Trial Court noted that Cemetery's valuation[4] is reflected in its one-page spreadsheet offered into evidence. The Trial Court set forth two reasons to explain its conclusion that Cemetery did not produce sufficient, competent, credible and relevant evidence to overcome the *prima facie* validity of the BPAAR assessments, stating:

1. [Cemetery] did not include income from opening and closing graves…in valuing the property under an income approach. Graves may be opened or closed only by [Cemetery]. Thus, this revenue runs with the land, meaning that whoever purchases the land purchases this income stream which the land produces. Consequently, sellers and buyers would take this revenue into account in valuing the property. I found that [Cemetery] did not offer any convincing evidence

---

[4] Cemetery's valuation per the spreadsheet Ward prepared reflects the value for land only as $642,000 for 2009, $774,000 for 2010, and $932,000 for 2011. (Spreadsheet, R.R. at 203a.)

7

explaining why this income from opening and closing graves should not be considered in valuing the properties.

2. …Mr. Ward explained that in using the income approach he did not include revenue from the sale of mausoleum spaces because the mausoleum must be maintained in perpetuity. Thus, the minute the cemetery inters the first body in the building the mausoleum shifts from being an asset to a liability…I do not find Mr. Ward's testimony to be credible. Mausoleums are constructed by cemeteries to increase their profits.

(Trial Ct. Op., R.R. at 201a-202a.) The Trial Court discussed Ward's testimony with regard to the mausoleum structures, and his stated opinion that they may require extensive rebuilding and restructuring in order to stand up over time. The Trial Court stated, "Mr. Ward's vague description of what 'may' happen in the future does not support Mr. Ward's excluding all revenue from sales of mausoleum spaces." (*Id*., R.R. at 5a.) The Trial Court concluded by finding that Cemetery did not produce any convincing evidence explaining why no income from the sale of mausoleum spaces was included in valuing Property. (*Id*., R.R. at 202a.)

With regard to the School District, the Trial Court stated that it used the BPAAR assessed values because it also concluded that the School District had also failed to overcome the *prima facie* validity of the BPAAR assessment. The Trial Court opined that it would not explain its reasons for its ruling as to the School District because the taxing bodies never filed exceptions to the Board Master's Report.[5]

---

[5] The School District's 'Objections to Master's Report' and 'Brief in Support of Objections to Master's Report' were filed in July, 2013. (R.R. at 135a-143a; 144a-154a.) Neither BPAAR nor the County submitted a brief.

Before this Court, Cemetery argues, first, that the Trial Court erred by making credibility determinations that are within the sole and exclusive purview of the Board.[6] We do not agree. The procedure for tax assessment appeals in the County is well-established. Pursuant to Section 518.1 of the General County Assessment Law (Act), Act of May 22, 1933, P.L. 853, added by Act of December 28, 1955, P.L. 917, *as amended*, 72 P.S. § 5020-518.1, all tax assessment appeals from a Disposition of Appeal from Real Estate Assessment of BPAAR must be assigned to a board of viewers appointed by the administrative judge of the civil division. At the hearing, the taxing authority first presents the assessment, to make out a *prima facie* case for its validity; the burden then shifts to the taxpayer to present sufficient competent, credible and relevant evidence of the fair market value of the property to overcome the *prima facie* case. *Koppel Steel Corporation v. Board of Assessment Appeals of Beaver County*, 849 A.2d 303, 307 (Pa. Cmwlth. 2004). Following the hearing, the board master's report is issued pursuant to 72 P.S. § 5020-518.1(c) and Allegheny County Local Rule 503(14). However, "a master's report is not a final decision, and unless adopted by the trial court, has no effect whatsoever on the parties…the report of a master is advisory only and must be incorporated into an order of a trial judge to be appealable." *In*

[6] The Board relies upon this Court's decision in *Soska v. Bishop*, 19 A.3d 1181 (Pa. Cmwlth 2011), for the proposition that the Board's judgments may not be infringed upon by a reviewing court in favor of that court's own judgment. Indeed, in *Soska*, we opined that this Court's review of a board of viewer's decision was limited to ascertaining the validity of the viewer's jurisdiction, the regularity of the proceedings, questions of law, and whether the viewers' decision is manifestly unreasonable, shows partiality, prejudice, bias or ill-will, or is clearly erroneous due to lack of support. *Id*. at 1187 n.4. However, *Soska* involved a completely different appellate process governed by a different statute; it was decided under the Private Road Act, Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§ 2731-2891, where the appointed board of viewers toured the property involved and determined that the opening of a private road was not a strict necessity, and denied a petition to open a private road over neighbors' lands.

*re Appeal of the City of Pittsburgh,* 600 A.2d 630, 633 (Pa. Cmwlth. 1991). Under Allegheny County Local Rule 503(18), after an objecting party has notified the board of viewers that all briefs have been filed and the matter is ripe for disposition, the common pleas court is authorized to schedule oral argument or decide the objections on the briefs without oral argument. The trial court hears the matter *de novo* in an assessment appeal and, accordingly, is the ultimate finder of fact. *Parkview Court Associates v. Delaware County Board of Assessment Appeals*, 959 A.2d 515, 520 (Pa. Cmwlth. 2008). In exercising its role as fact finder, the duty of the trial court is to determine the property's current market value on the basis of competent, credible, and relevant evidence. *Gilmour Properties v. Board of Assessment Appeals of Somerset County*, 873 A.2d 64, 66 n.3 (Pa. Cmwlth. 2005). The function of the trial court is not to independently value the property, but to weigh the conflicting testimony and values expressed by the competing experts and arrive at a valuation based on the credibility of their opinions. *Gilmour*, 873 A.2d at 66 n.3. Accordingly, it is clear that, contrary to Cemetery's argument, the Trial Court acted within its authority to make credibility determinations regarding the evidence presented before the Board.

Cemetery argues that the School District did not meet its initial burden of establishing the *prima facie* validity of the assessment, because there is no record evidence of any submission of official assessment records. On the contrary, and as noted above, the Board Master's Report indicates that the property tax transcript for the tax years in question was marked as "Exhibit A" and admitted into evidence. (R.R. at 131a.)

Cemetery further objects to the Trial Court's determination that it offered no evidence of fair market value for the years 2003-2008 and for the years

10

after 2011; Cemetery avers that in fact, it presented statements of earnings for the years 2004-2011, which the Trial Court unilaterally and erroneously disregarded. We reject this argument. The record testimony from the hearing before the Board indicates that Ward was questioned as to whether he had provided figures to demonstrate earnings from the Perpetual Care Trust Fund for 2003-2007. (H.T., R.R. at 122a.) The hearing was thereupon recessed, to provide the School District with the opportunity to review this information; upon resumption of the hearing, there was no further discussion whatsoever as to these earnings figures or their relevance as to Ward's opinion of assessed value for those years.

Here, the parties agreed to submit the matter on the record to the Trial Court; the Trial Court was therefore empowered to make its own credibility determination as if the Trial Court itself had heard the witnesses. Moreover, there would be no error here even if the Trial Court were not empowered to determine credibility. Before factual findings may be made, there must be competent evidence presented to support the findings. In this matter, as correctly noted by the Trial Court, there was no competent evidence offered by Cemetery to support Ward's conclusion. As previously noted, since Cemetery failed to overcome its burden to offer competent evidence to rebut BPAAR's assessment, any limitation of the Trial Court's ability to make credibility determinations where no additional testimony was taken is irrelevant. Competency of testimony is a matter of law always subject to both the Trial Court's independent review as well as this Court's independent review upon appeal. Accordingly, we affirm.

_____
**JAMES GARDNER COLINS, Senior Judge**

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mt. Lebanon Cemetery Co.,       :
                Appellant    :
                              :
            v.               :
                              :
Board of Property Assessment,   :
Appeals and Review          :  No. 2245 C.D. 2014
                              :
            v.               :
                              :
Mt. Lebanon School District, Township :
of Mt. Lebanon and County of    :
Allegheny                   :

## O R D E R

AND NOW, this 28th day of January, 2016, the Order of the Court of Common Pleas of Allegheny County is AFFIRMED.

 

_____
**JAMES GARDNER COLINS, Senior Judge**