642 A.2d 564

**In re in the Matter of EXCEPTIONS TO JACKSON TOWNSHIP ORDINANCE NO. 91–103.**

**Appeal of JACKSON TOWNSHIP BOARD OF SUPERVISORS, Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 11, 1994.

Decided May 17, 1994.

136

Ronald J. Mishkin, for appellant.

Arthur L. Zulick, for appellee.

Before SMITH and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The Jackson Township Board of Supervisors (supervisors) appeals a decision of the Monroe County Court of Common Pleas, Quarter Sessions, which rejected the supervisors' exceptions to a board of viewers' (board) report. That report recommended upholding affected residents' exceptions to

Jackson Township Ordinance No. 91–103—which vacated a portion of Township Road 486 known as Twin Lake Road, extending across a bridge and the breast of Trout Lake Dam. The trial court upheld the board's conclusion that the ordinance, enacted by the supervisors, should be vacated and Twin Lake Road re-opened.

The first of two questions raised by the supervisors in this appeal is whether the board exceeded its scope of review, which the supervisors contend is extremely circumscribed.

The supervisors argue that their power to vacate roads is of a legislative nature and the judiciary should not intervene in their decisions absent illegality, arbitrariness or flagrant abuse of discretion on their part. They maintain their authority under The Second Class Township Code [1] is exclusive and extremely broad. This Code provides in relevant part that "[t]he township supervisors may by ordinance enact, ordain, survey, lay out, open, widen, straighten, vacate and relay all roads and parts thereof which are wholly within the township, upon the petition of interested citizens, or without petition if in the judgment of the supervisors, it is necessary." 53 P.S. § 66101.

While the supervisors do not maintain that their actions are outside the scope of judicial review,[2] they submit that the board and the trial court exceeded their narrow roles in

1. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65101–67201.
2. The Second Class Township Code also provides:
 (a) Prior to the passage of any ordinance for the laying out, opening, changing or vacating of any road ... the supervisors shall give ten days' written notice to the property owners affected thereby of the time and place when and where all parties interested may meet and be heard....
 (b) After such hearing, should the supervisors, or a majority thereof, decide in favor of exercising the power, so conferred, they shall enact the necessary ordinance and file a copy of such ordinance ... in the office of the clerk of court of quarter sessions.
 (c) Any citizen or freeholder of the township may ... file exceptions to the ordinance together with a petition for a review. Thereupon, *the court of quarter sessions shall appoint viewers from the county board of viewers for the purpose of reviewing the ordinance and exceptions thereto.*
 53 P.S. § 66102 (emphasis added).

exercising a *de novo* evidentiary review based on misinterpretation of dicta in *In Re Vacation of Portion of Township Road 164*, 102 Pa.Commonwealth Ct. 80, 518 A.2d 2 (1986) and *In Re Hain Avenue*, 54 Pa.Commonwealth Ct. 102, 420 A.2d 760 (1980). They cite several trial court decisions, *see, e.g., In Re Morrison Street*, 80 Pa.D. & C. 542 (1952),[3] as well as *In Re City of Altoona*, 479 Pa. 252, 388 A.2d 313 (1978), for the proposition that reviewing bodies should not delve into the advisability of supervisors' actions, but instead should look only for procedural defects and evidence of misconduct. The supervisors also contend that the trial court incorrectly stated that The Third Class City Code [4] does not provide for a board of viewers, *see* 53 P.S. § 37922, and therefore erred when it distinguished *Altoona* on that basis.

The residents argue that *Township Road 164* clearly requires a *de novo* evidentiary review by a board of viewers appointed by a court of common pleas. They also contend that *Altoona* is inapposite because it did not involve a board of viewers' scope of review or The Second Class Township Code and was concerned only with rights a city could reserve in a road, not whether the city could vacate the road.

We agree with the residents that our decision in *Township Road 164* controls and that a broader scope of review than that advanced by the supervisors is vested in the board. We specifically held in *Township Road 164* that, under the General Road Law,[5] "the Board of Viewers, appointed by the

3. *But see Vacation of Township Road No. 334*, 13 D. & C.2d 130 (1956), which includes a discussion that is in accord with our subsequent decision in *Township Road 164*. We note that the court in *Morrison Street* concluded that there was evidence to sustain the supervisors' finding that it was necessary for public convenience to vacate the road at issue. *Morrison Street* at 543.

4. Act of June 3, 1931, P.L. 932, *as amended*, 53 P.S. §§ 35101–39701.

5. Act of June 13, 1836, P.L. 551, *as amended*, 36 P.S. §§ 1761–3588. We explained in *Township Road 164* that amendment to The Second Class Township Code in 1947 divested the quarter sessions courts of original jurisdiction over road matters as provided under the General Road Law and placed determinations formerly made by a board of viewers appointed by a court within the discretion of township supervisors. However, we also emphasized that the amendment superseded

common pleas court for the purpose of reviewing the ordinance and exceptions thereto, does not review the action of the supervisors as would an appellate body; rather their function is to exercise independent judgment in a *de novo* evidentiary proceeding and determine the propriety of the ordinance to which exception has been taken." *Id.* at 83, 518 A.2d at 4. We do not agree that our statement is mere dicta. The holding was integral to our remand order. Although the supervisors are correct that our holding conflicts with several trial court opinions, it is consistent with several other contemporary trial court opinions and is not inconsistent with *Altoona,* which the residents properly distinguish from this case.[6]

■ To elucidate the *Township Road 164* holding, we add a point of law which the trial court and the board recognized and with which the parties apparently do not disagree. That is, the board's review here is only to determine the *necessity* for the vacation, 53 P.S. § 66101, for a determination of the "propriety of the ordinance" is premised on that criterion, which gives the supervisors the authority to vacate a road *sua sponte* under The Second Class Township Code. In fact, when we remanded the case to the trial court in *Township*

the General Road Law only to a limited extent; procedure subsequent to the filing of an ordinance by township supervisors and appointment of a board of viewers is still governed by the General Road Law. *Id.; see also In Re Hain Avenue.*

6. The Pennsylvania Supreme Court in *Altoona* decided the sole question of whether "a municipality which has acquired a street by dedication may, when later it vacates the street, reserve to itself an easement for utility lines within the boundaries of the vacated street." *Id.* at 255, 388 A.2d at 314. Hence, most of the Supreme Court's discussion in resolving this question is not pertinent to this case. The only arguably relevant passage states that "the City of Altoona had both the power and duty to vacate Kenyon Road ... by enactment of an appropriate ordinance if the City Council deemed such action to be in the public interest. This is a normal function of city government, and judicial intervention is proper only where it appears that there has been an abuse of discretion or some clear violation of law in the exercise of that function." *Id.* at 260, 388 A.2d at 317. In the case before us, by contrast, the residents have not challenged the function, power or duty of local government to enact an ordinance vacating a road. Also, this case requires an analysis of The Second Class Township Code, the role of supervisors and the General Road Law—none of which is discussed in *Altoona.*

*Road 164,* we stated that "the court must appoint another Board of Viewers whose duty it shall be to hold an evidentiary hearing *on the issue of necessity for vacating* a portion of TR 164." *Id.* at 86, 518 A.2d at 5 (emphasis added). We have thus established that the board conducts a *de novo* review of the circumstances of the vacation, but that its review is limited under The Second Class Township Code to a determination of whether, on the facts as found by the board, the vacation of the road was "necessary."

 Here, both the board and the trial court acknowledged the discretion of the supervisors. Both also recognized that their proper standard of review was to determine if the supervisors had produced sufficient evidence to support the judgment that vacating Twin Lake Road was necessary. *In Re: In the Matter of Exceptions to Jackson Township Ordinance No. 91–103* (No. 116 Misc. 1991, filed May 13, 1993), slip op. at 8–9; Report of Board of Viewers, filed June 19, 1992, p. 6. Therefore, we reject the supervisors' contention that an incorrect scope of review was applied.

We now turn to the remaining question presented by the supervisors in this appeal, which is whether the board disregarded substantial evidence on the necessity of vacating Twin Lake Road.

The supervisors argue that all they need find is that the vacation is in the public interest, that the land no longer serves its intended use or that safety and fiscal prudence warrants vacation.[7] They also submit that a mere two-mile inconvenience to the residents does not outweigh the onerous financial burden of a road which benefits only a few persons. They state that the road is presently unsafe and repair work would cost $265,000.

The residents argue that the vacation was not necessary and that the road was not useless, inconvenient or burdensome. They point to the board's failure to "readily understand the

7. The supervisors rely on *Altoona* for this proposition. Again, however, the residents do not challenge the motives of the supervisors or their power to enact an ordinance vacating a road. The question here is whether the supervisors justifiably found the road vacation necessary.

need to close an apparently good access." (Report of Board of Viewers, filed June 19, 1992, pp. 7–8). They further assert that the supervisors' evidence on cost and safety was insufficient.

In assessing necessity, it is evident that one of the most important inquiries to be addressed by the board is whether it is financially prudent to vacate a road.[8] Of course, the less use that is made of the road, or the more unsafe a road, the stronger a township's case for vacation becomes. In this case, there is no evidence supporting a lack of road use; to the contrary, neighboring property owners testified to their use of the road and the inadequacy of other "back" routes. The record also fails to support the supervisors' assertion that the road is unsafe.

Nevertheless, there is some evidence of financial cost. At the public hearing before the supervisors to consider the question of whether to vacate Twin Lake Road, the supervisors stated that the road had wear and tear damage, the bridge and the dam spillway had to be upgraded and work on the breast of the dam would be required. (Notes of Testimony (N.T.), July 18, 1991, p. 10). The supervisors stated they derived a total cost figure of $265,000 from an engineer's statement at a public meeting following a study that had been done several years before the vacation hearing; this expenditure, the supervisors stated, would subsume all of the $260,000 township road budget. (N.T., July 18, 1991, pp. 17–19, 35–37, 52).

There is, however, a lack of any other evidence, such as the report referred to by the supervisors or an expert's estimate, to support their statements of cost. Moreover, it was explained that Jackson Township owns only the surface of the road; it does not own the bridge, the spillway or the dam and is not responsible for repairs to the dam. (N.T., July 18, 1991, pp. 10, 11, 34). The supervisors stated that bridge replacement would occur "whenever the property owner decided to get around to fix the breast of the dam," which repair appar-

8. We note that this was an important consideration in *Township Road No. 334.*

ently would be in accord with a report by the Army Corps of Engineers. (N.T., July 18, 1991, p. 35). There are various references in the record to compliance requirements and/or plans pertaining to the spillway and dam by the Army Corps of Engineers and the Departments of Environmental Resources and Transportation. We have conducted a thorough review of the record, however, and conclude, as did the board, that it is indeterminable which of these entities, if any, have issued requirements or plans, when such issuances were made or what in fact they require of private owners or of the township.

■ We conclude that the supervisors' statements are insufficient to prove present financial inability to maintain the road. There is no evidence that a road expenditure of the magnitude suggested is or will be required or that the expenditure would be the township's responsibility. At the board hearing to consider the exceptions to the vacation ordinance, each party presented an expert witness. The residents' expert estimated the total cost of all necessary bridge work and maintenance to be $23,000. (N.T., December 19, 1991, pp. 46–47). As the trial court noted, the supervisors' expert, the Jackson Township engineer, testified that Twin Lake Road is "a passable road" and was in need only of periodic seal coating or resurfacing. (N.T., December 19, 1991, p. 67).

In sum, on the record here, the supervisors' allegations of overburdening cost are speculative at best. There is also a lack of evidence that the road was unsafe or that its use was minimal. Therefore, we agree with the conclusion of both the trial court and the board that vacation is at least presently unnecessary. In affirming the board's report, the trial court stated:

> The Board based their [sic] recommendation on the following findings: (1) that the Township had insufficient evidence to support vacating Twin Lakes Road, and that the vacation was in fact, premature; (2) that the road was not useless, as supported by the fact that the affected residents used it daily as a direct access to Route 715; (3) that the road was not inconvenient, but in fact, vacating it would cause incon-

venience to the affected residents, as they would need to travel a longer and less direct route to get to Route 715, and emergency vehicles such as ambulances and fire trucks would no longer have direct access but would be forced to travel a longer route to get to the affected residents in an emergency; and (4) that the road was not burdensome to the Township based on the testimony of both expert witnesses, who testified that the road and bridge were currently safe for travel and needed only general maintenance and upkeep. In regards [sic] to this last point, the Board noted in its report that the amount of maintenance now necessary (sandblasting and repainting the bridge and installing a guiderail) could well be the result of the Township's failure to maintain the road for the last several years, despite an earlier Court Order to the contrary.

*Jackson Township Ordinance,* slip op. at 11–12. This is an accurate account of the board's findings and our review of the record confirms that the findings are supported by substantial evidence. The board did not disregard evidence regarding the necessity of the vacation, but instead exercised its role in weighing evidence on the question of necessity and drew from that evidence findings adverse to the supervisors' position.[9] Our appellate role does not allow us to disturb these findings. Unlike the board appointed by the trial court, we do not conduct a *de novo* review. Our review reveals no error of law, abuse of discretion or findings unsupported by substantial evidence.

Based on our foregoing analysis, we see no error in the determination that the supervisors unjustifiably found the

9. As can be seen from the findings and as alluded to above, the board, contrary to a contention by the supervisors, obviously did not rely solely on inconvenience or loss of aesthetics in making its recommendations against vacation. Indeed, the board specifically stated that it "found more important the testimony of the two expert witnesses" and, further, that "the inconvenience involved is not the decisive point with the Board of View." (Report of Board of Viewers, filed June 19, 1992, pp. 3, 7). It is clear from the opinion of both the trial court and the board that factors relevant to assessing necessity, which alone limits the supervisors' discretion to vacate under The Second Class Township Code, were given due consideration.

vacation of Twin Lake Road to be presently necessary. Accordingly, the trial court's order is affirmed.

## ORDER

AND NOW, this 17th day of May, 1994, the order of the Court of Common Pleas of Monroe County, No. 116 Misc.1991, dated May 13, 1993, is hereby affirmed.