# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Vacation of a Portion of : **CASES CONSOLIDATED**
Paper Mill Road, Newtown Township, :
Petition of Scott Brehman and :
Margaret Brehman : No. 701 C.D. 2017
:
Appeal of: Newtown Township :


In Re: Vacation of a Portion of :
Paper Mill Road, Newtown :
Township, Petition of Scott :
Brehman and Margaret Brehman : No. 730 C.D. 2017
:
Appeal of: Jennifer F. Anderson, :
Ross D. Anderson, John Balog, Jr., :
Theresa A. Balog, Valerie Boyko, :
Henry S. Bryans, Martha B. Bryans, :
Maureen A. Cherry, James Cox, :
Monica Cox, Gary S. Coyle, Laurena :
S. Coyle, James B. Francis, Jr., Sally :
M.G. Francis, Brandon J. Koch, Diane :
M. Koch, Janet Krevenas, Christopher :
D. McIsaac, Linda I. McIsaac, John W. :
Newman, Lansdale S. Newman, David :
M. Reller, Tracy M. Reller, Paula :
Rothermal, Rodman S. Rothermal, :
Paul H. Saint-Antoine, Susan M. :
Saint-Antoine, Robert S. Winter, Jr., :
and Vicki L. Winter :


In Re: Vacation of a Portion of :
Paper Mill Road, Newtown Township :
Petition of Scott Brehman and :
Margaret Brehman : No. 1300 C.D. 2017
:
Appeal of: Newtown Township :

In Re: Vacation of a Portion of     :
Paper Mill Road, Newtown           :
Township, Petition of Scott Brehman : No. 1311 C.D. 2017
and Margaret Brehman               : Submitted: May 27, 2022
                                   :
Appeal of: Jennifer F. Anderson,   :
Ross D. Anderson, John Balog, Jr., :
Theresa A. Balog, Valerie Boyko,   :
Henry S. Bryans, Martha B. Bryans, :
Maureen A. Cherry, James Cox,      :
Monica Cox, Gary S. Coyle,         :
Laurena S. Coyle, James B. Francis, Jr., :
Sally MG Francis, Brandon J. Koch, :
Diane M. Koch, Janet Krevenas,     :
John W. Newman, Lansdale S.        :
Newman, Christopher D. McIsaac,    :
Linda I. McIsaac, David M. Reller, :
Tracy M. Reller, Rodman S.         :
Rothermal, Paula Rothermal,        :
Paul H. Saint-Antoine, Susan M.    :
Saint-Antoine, Robert S. Winter, Jr., :
and Vicki L. Winter                :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE STACY WALLACE, Judge

OPINION BY JUDGE WOJCIK                    FILED: April 20, 2023


In these consolidated appeals, Newtown Township (Township)[1] and

"Paper Mill Residents"[2] (collectively, Appellants) appeal from the Delaware County

---

[1] The Township is a township of the second class located in Delaware County, Pennsylvania. *See* 125 The Pennsylvania Manual 6-5, 6-93 (2021); *Emert v. Larami Corporation*, 200 A.2d 901, 902 n.1 (Pa. 1964) ("Courts will take judicial notice of geographical facts such as the county in which a town or city is located.") (citations omitted).

[2] Paper Mill Residents are Jennifer F. Anderson, Ross D. Anderson, John Balog, Jr., Theresa A. Balog, Valerie Boyko, Henry S. Bryans, Martha B. Bryans, Maureen A. Cherry, James **(Footnote continued on next page…)**

Court of Common Pleas' (trial court) May 23, 2017 final decrees and order that rejected the Board of View's (Board) Report denying Scott and Margaret Brehmans', husband and wife (Brehmans), Petition to Vacate a Portion of Paper Mill Road (Petition to Vacate) and ordered the vacation of a portion of Paper Mill Road. Appellants argue that the trial court exceeded its review; substantial evidence supports the Board's findings; and those findings support the Board's conclusion that the road in question should not be vacated. For the reasons that follow, we reverse the order of the trial court and reinstate the Board's Report.

## I. Background

On January 31, 2013, the Brehmans filed a Petition to Vacate with the Township Board of Supervisors (Board of Supervisors) to vacate the eastern most 583.83 feet of Paper Mill Road (Contested Road) pursuant to Section 2304(a) of the Second Class Township Code (Code).[3] Reproduced Record (R.R.) at 1357a-58a. The Contested Road immediately precedes the border between the Township and Radnor Township, and divides the Brehmans' residential property, 44 Paper Mill Road, Newtown Square, Delaware County (Property). The Brehmans purchased the

Cox, Monica Cox, Gary S. Coyle, Laurena S. Coyle, James B. Francis, Jr., Sally M.G. Francis, Brandon J. Koch, Diane M. Koch, Janet Krevenas, Christopher D. McIsaac, Linda I. McIsaac, John W. Newman, Lansdale S. Newman, David M. Reller, Tracy M. Reller, Paula Rothermal, Rodman S. Rothermal, Paul H. Saint-Antoine, Susan M. Saint-Antoine, Robert S. Winter, Jr., and Vicki L. Winter. Collectively, they own approximately 15 residences on Paper Mill Road and Paper Mill Lane, of which there are approximately 28 total residences. Paper Mill Residents participated as intervenors in the proceedings below.

[3] Act of May 1, 1933, P.L. 103, *as amended*, added by the Act of November 9, 1995, P.L. 350, 53 P.S. §67304(a). This section provides: "The board of supervisors may by ordinance enact, ordain, survey, lay out, open, widen, straighten, vacate and relay all roads and bridges and parts thereof which are located wholly or partially within the township." 53 P.S. §67304(a).

10-acre Property in 2011 and converted the barn into their primary residence. The Property also contains a tenant house.

On March 25, 2013, at a public meeting, the Board of Supervisors considered and denied the Brehmans' Petition to Vacate by unanimous oral vote, upon concluding that the Contested Road was not useless, inconvenient, or burdensome, and it subsequently memorialized its oral vote by written unanimous resolution. R.R. at 1351a, 1357a.

The Brehmans then filed a petition for the appointment of viewers with the trial court pursuant to Section 2304(c) of the Code[4] and Section 18 of Act of June 13, 1836, P.L. 551, commonly referred to as the General Road Law, 36 P.S. §1981, to review the Petition to Vacate. R.R. at 1357a. The trial court appointed the Board, which then conducted two evidentiary hearings on November 14, 2014, and January 23, 2015, and a physical view of the Contested Road and surrounding area before filing its Report on February 3, 2016. Paper Mill Residents intervened and

---

[4] Section 2304(c) provides:

> When any petition is presented to the board of supervisors requesting the board of supervisors to open or vacate a specific road in the township and the board of supervisors fails to act on the petition within sixty days, the petitioners may present their petition to the court of common pleas which shall proceed thereon under the act of June 13, 1836 (P.L. 551, No. 169), referred to as the General Road Law. If the board of supervisors acts on the petition but denies the request of the petition, the board of supervisors shall notify the person designated in the petition of its denial. If the request of the petition is denied, the petitioners, or a majority of them, may within thirty days after receipt of the notice petition the court of common pleas for the appointment of viewers and proceedings shall be taken thereon under the General Road Law.

53 P.S. §67304(c).

3

participated in the proceedings. Based on the testimony and evidence presented, the Board made the following relevant findings of fact.

By order dated August 23, 1836, the Court of Quarter Sessions of Delaware County established Paper Mill Road as a public road in the Township, opening a public thoroughfare between St. David's Road in the Township and Darby-Paoli Road in Radnor Township, with a 33-foot right-of-way. Report of the Board of View, 2/3/16, Finding of Fact (F.F.) No. 6. Only a portion of the Contested Road is paved and improved. F.F. No. 12. Paper Mill Road has no paved turnaround or cul-de-sac to permit vehicles to turn around. F.F. No. 19. Paper Mill Road splits into Paper Mill Lane and Paper Mill Road a short distance before the area sought to be vacated. Only three residences, including the Brehmans, use the portion of Paper Mill Road after the split to access their residences. F.F. No. 34.

In 1970, abutting Radnor Township purchased 90 acres of land surrounding a portion of Paper Mill Road to make Skunk Hollow Park. F.F. No. 13. The Radnor Township side of the road was blocked off to vehicular traffic and is still used as a limited access entrance to Skunk Hollow Park from Darby-Paoli Road. F.F. No. 14. Skunk Hollow Park includes numerous walking trails, Darby Creek, Little Darby Creek, and access to a 47-acre public park known as the "Willows." F.F. Nos. 17, 52.

The Brehmans are the only owners of land abutting the Contested Road. F.F. No. 15. The Brehmans were aware that Paper Mill Road traversed the Property when they purchased it. F.F. No. 21. The Contested Road provides vehicular access to the Brehmans' Property only. F.F. No. 26. There is no need for vehicles to travel over the Contested Road other than to access the Brehmans' Property. F.F. No. 30. The Brehmans presented evidence that it would cost the Township more than

$300,000 to improve the Contested Road. F.F. No. 23. The Township represented that, if the Petition to Vacate is denied, it "may improve" Paper Mill Road with a turnaround and other improvements, and its engineer testified that such improvements would cost approximately $130,000. F.F. Nos. 27-28. If, however, the Petition to Vacate is granted, a turnaround would not be constructed at the then existing terminus of the Contested Road unless the property owners in that area petition the Township to build one. F.F. No. 29.

The cost of policing and maintaining the Contested Road is borne by the Township. F.F. No. 31. The Township has performed no maintenance except for mowing the swath in the unpaved portion, snow plowing the paved portion, and conducting biannual inspections. F.F. Nos. 32, 35. The Township retains the Contested Road as a public road to provide area residents with a nature trail to access Skunk Hollow Park. F.F. No. 33.

When the Brehmans purchased the Property, the Contested Road was barricaded, by the prior owner, at the end of the paved portion to prevent vehicular traffic and contained a "No Trespassing" sign, which they maintained. F.F. Nos. 36-38. In addition to the barricade, there were fences to prevent vehicles from going around the barricade. F.F. No. 39. The prior owner lined the cartway of the Contested Road with piles of rocks to dissuade motorists from parking in the right-of-way. F.F. No. 40. The record established that the Brehmans sought and attempted to interfere with the access to the Contested Road for a limited time. F.F. No. 58.

After purchasing the Property, the Brehmans monitored the vehicular and pedestrian usage of the Contested Road with surveillance cameras in between September 20, 2012, and October 11, 2012, and then November 19, 2013, and December 5, 2013. F.F. Nos. 41-48. The monitoring revealed two to five vehicles

per day, with a high count of 10 or more, erroneously entering the Contested Road. F.F. No. 48. Because the paved portion of the Contested Road ends, these vehicles have to turnaround to exit, and, on occasion, have disturbed the Brehmans' Property. F.F. No. 48-49.

The predominant usage of the Contested Road was by pedestrians and children who used it recreationally to walk, jog, and ride bikes, on average two or three times per day. F.F. Nos. 54-55. Most would proceed to the end of the macadam and turn around. F.F. No. 54. "Pedestrian and bike trips to the end of the macadam were not trips intended to use the [Contested Road] to access any property unless proceeding to Skunk Hollow Park." F.F. No. 55. The use of the Contested Road to access Skunk Hollow Park is greatest in the fall and spring and declines in the summer months. F.F. No. 56. The purpose of the Township in retaining the Contested Road as a public road is to provide the residents of Paper Mill Road and Paper Mill Lane with a "nature trail" to access Skunk Hollow Park. F.F. No. 33.

In addition to the recreational use, Paper Mill Resident Theresa Balog owns a property on Paper Mill Lane and uses the Contested Road to access the rear .4 acre of her property, which is intersected by Darby Creek. F.F. No. 16. The Darby Creek Valley Association and the Delaware County Planning Department presented evidence on the importance of the Contested Road because it provides access to, and contributes to, the Darby Creek Watershed Greenway Plan. F.F. No. 57. Residents of Paper Mill Road and Paper Mill Lane may access Skunk Hollow Park through alternate but "more inconvenient routes." F.F. No. 51.

Based upon the evidence presented, the Board concluded that, as to vehicular traffic, the Contested Road is useless, inconvenient and burdensome. Board of View, 2/3/16, Conclusion of Law (C.L.) No. 6. Critically, the Board

6

determined that, as for "**pedestrian and recreational traffic**," the Contested Road was *not* useless, inconvenient, or burdensome. C.L. No. 8 (bolded emphasis in original). "The record establishes that certain [Paper Mill Residents] and other neighbors *use the* [*Contested Road*] *for walking, cycling, hiking or other activity*." C.L. No. 7 (emphasis added). "A portion of this use extends over the entire [Contested Road] for access into Skunk Hollow Park." *Id.* On this basis, the Board unanimously denied the Petition to Vacate. The Brehmans appealed the Board's Report.

By order dated June 1, 2016, the trial court, without taking any additional evidence, and without opinion, rejected the Board's Report and vacated the Contested Road. R.R. at 29a. Appellants appealed to this Court. By order dated October 4, 2016, this Court vacated the order and remanded the matter to the trial court "to issue a *decree nisi*, with exceptions and an opinion to follow." *In re: Vacation of a Portion of Paper Mill Road* (Pa. Cmwlth., Nos. 966 C.D. 2016 & 973 C.D. 2016, filed October 4, 2016).

On remand, by order dated December 15, 2016, the trial court issued a *decree nisi* again rejecting the Board's Report and vacating the Contested Road. In the supporting opinion, the trial court determined that the evidence of recreational use was insufficient to meet the standard as to what constitutes useless, inconvenient, or burdensome, and the cost to maintain and improve the Contested Road was burdensome. Appellants filed timely exceptions, which the trial court overruled by final decrees and order dated May 23, 2017. On August 16, 2017, the trial court issued "Findings of Fact and Conclusions of Law Issued in Support of the May 23rd, 2017 Final Decree." R.R. at 143a-66a. Ultimately, the trial court concluded that the Board's findings regarding the high cost of maintenance and improvements should

7

have led the Board to conclude that the Contested Road is useless, inconvenient, or burdensome, even though there was evidence presented regarding its recreational use. Trial Court Opinion, 8/16/17 at 24; R.R. at 166a.

The Township and Paper Mill Residents again appealed and filed statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On October 18, 2017, the trial court issued a 50-page opinion pursuant to Pa.R.A.P. 1925(a) in support of the May 23, 2017 Final Decrees and Order. *See* Trial Court 1925(a) Opinion, 10/18/17. By Order dated November 29, 2017, this Court consolidated the Township's and Paper Mill Residents' appeals. In addition to the parties' briefs, Radnor Township[5] filed an *amicus curiae* brief in support of Appellants' positions.

## II. Issues

In this appeal,[6] Appellants collectively raise three issues, which we combine and summarize as follows. First, they assert that the trial court failed to apply the appropriate scope and standard of review for road vacations. Second, they contend that the trial court erred in rejecting the Board's Report where substantial

---

[5] Radnor Township is a home rule municipality that abuts the Township. Radnor Township asserts an interest in this case because the Contested Road has historically been used as a through-way between the townships and is currently used as a pedestrian access way to Radnor Township parks, such as Skunk Hollow Park and the Willows, as well as Darby Creek and Little Darby Creek, and serves as a pedestrian access connection for Radnor residents to the Township. Amicus Curiae Brief at 1.

[6] "In reviewing a [b]oard of [v]iew's decision, '[a]ppellate review is limited to ascertaining the validity of the [b]oard's jurisdiction, the regularity of proceedings, questions of law[,] and whether the [b]oard abused its discretion.'" *In re Adams*, 212 A.3d 1004, 1012 (Pa. 2019) (citations omitted). An abuse of discretion occurs when the board's decision shows "manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995).

8

evidence supports the Board's finding and ultimate determination that the Contested Road should not be vacated because it is not useless, inconvenient, or burdensome. Third, they argue that the Board's findings are legally sufficient to support the denial of the Petition to Vacate as a matter of law.

### III. Discussion
### A. Review

First, Appellants argue that the trial court exceeded its review by making its own findings and substituting its judgment for that of the Board. We agree.

Section 2304(a) of the Code grants power to a second class township to vacate public roads within the township. 53 P.S. §67304(a). If the board of supervisors fails to act on, or denies, a petition to vacate a road, the petitioners seeking vacation may petition the trial court for the appointment of a board of view and proceedings under the General Road Law. 53 P.S. §67304(c); *see* Section 18 of the General Road Law, 36 P.S. §1981.[7] A second class township road formally

---

[7] This section provides:

> The courts aforesaid shall, within their respective counties, have authority, upon application to them by petition, to inquire of and to change or vacate the whole or any part of any private or public road which may have been laid out by authority of law, whenever the same shall become useless, inconvenient or burthensome notwithstanding the fact that the vacation of a part of a public road results in leaving the remaining part or parts of the road with one of its termini at a point other than in a public highway or place of public resort: Provided, That the other terminus of each of the remaining parts of the road is in a public road and that each remaining part of the road is necessary for public travel or for the use of a property owner or owners located on such remaining part. *The said courts*

**(Footnote continued on next page…)**

9

opened to the public may only be vacated through these procedures. *In re Swamp Road in Wayne Township*, 859 A.2d 528, 530 (Pa. Cmwlth. 2004); *see Commonwealth ex rel. Attorney General*, 9 A. 524 (Pa. 1887).

Pursuant to Section 18 of the General Road Law, the common pleas courts[8] have the authority upon application "to inquire of and to change or vacate the whole or any part of any private or public road . . . ." 36 P.S. §1981. The common pleas courts shall proceed "by views and reviews, in the manner provided for the laying out of public roads and highways" by appointing a board of view consisting of three persons qualified to view the ground and make a report of their proceedings to the court.[9] *Id.*; *see* Section 1 of the General Road Law, 36 P.S. §1781; *see generally* Sections 2-4, 7-9, 51-58 of the General Road Law, 36 P.S. §§1782-1785, 1831-1834, 1852-1855.

The board of view conducts a *de novo* evidentiary review of such petitions to determine if the road sought to be vacated is "useless, inconvenient or burdensome" to the township in which it is located. *Swamp Road*, 859 A.2d at 532; *accord Codorus Stone & Supply Co., Inc. v. Kingston*, 711 A.2d 563, 565

---

> *shall proceed therein by views and reviews, in the manner provided*
> *for the laying out of public roads and highways.*

36 P.S. §1981 (emphasis added).

[8] The General Road Law refers to the "court[s] of quarter sessions." *See* Section 1 of the General Road Law, 36 P.S. §1781. In 1968, by constitutional amendment, the courts of quarter sessions and common pleas were unified into one court known as the court of common pleas. *In re Private Road, Cogan Township, Lycoming County*, 684 A.2d 237, 239 n.2 (Pa. Cmwlth. 1996).

[9] We note that the General Road Law governs public roads (36 P.S. §§1761-2721.4) and private roads (36 P.S. §§2731-2891). Because proceedings regarding private roads are handled in the same manner as public roads with the appointment of a board of view, Section 11 of the General Road Law, 36 P.S. §2731, cases dealing with the private road review process are instructive and germane to our discussion.

10

(Pa. Cmwlth. 1998); *In re Exceptions to Jackson Township Ordinance No. 91-103*, 642 A.2d 564, 566 (Pa. Cmwlth. 1994); *In Re Vacation of Portion of Township Road 164*, 518 A.2d 2, 4 (Pa. Cmwlth. 1986); *see* 36 P.S. §1981. The "useless, inconvenient or burdensome" standard "tracks the language of the General Road Law." *Swamp Road*, 859 A.2d at 532; *see* 36 P.S. §1981 ("useless, inconvenient or burthensome"). "Because the standard is in the disjunctive, only one of the three conditions is needed to justify vacation." *Swamp Road*, 859 A.2d at 532 (citing *Zeni v. Township Supervisors of Springhill Township*, 451 A.2d 809, 810, n.4 (Pa. Cmwlth. 1982); *In re Bristol Township Road*, 49 Pa. Super. 549, 553 (1912)). "The concepts of 'useless,' 'inconvenient,' or 'burdensome' are not cast in stone; they must necessarily draw their meaning from the facts of a particular case." *Zeni*, 451 A.2d at 810. Although Section 18 of the General Road Law itself is silent as to whom the road must become "useless, inconvenient or burdensome," under the rules of statutory construction, the provision favors the public, as opposed to private interests. Section 1922(5) of the Statutory Construction Act of 1972, 1 Pa. C.S. §1922(5).[10] A party seeking the vacation bears the burden of proof. *Codorus Stone*, 711 A.2d at 567.

The board of view is "an independent tribunal" and "factfinder." *Soska v. Bishop*, 19 A.3d 1181, 1187 (Pa. Cmwlth. 2011) (citing *Mandracchia v. Stoney Creek Real Estate Corporation*, 576 A.2d 1181, 1182-83 (Pa. Cmwlth. 1990)). It is for the board, as the factfinder to assess the weight and credibility of the evidence. *Soska*, 19 A.3d at 1187; *In re Vacation of a Portion of Township Road 308 Located*

---

[10] This section provides: "In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used: . . . [t]hat the General Assembly intends to favor the public interest as against any private interest." 1 Pa. C.S. §1922(5).

11

*in Leidy Township*, 943 A.2d 372, 376 (Pa. Cmwlth. 2008); *Ordinance No. 91-103*, 642 A.2d at 568. "Because the [b]oard is the factfinder, its judgments, including its determinations as to credibility of witnesses and weight of the evidence, [are] beyond the scope of appellate review." *Soska*, 19 A.3d at 1187 (citing *In re Rural Route Neighbors*, 960 A.2d 856, 860, 862 (Pa. Cmwlth. 2008)). "Although the board's findings are subject to review and may be set aside, its authority will not be infringed upon by a court's substituting its judgment for that of the viewers." *Driver v. Temple*, 543 A.2d 134, 136-37 (Pa. Super. 1988); *accord In re Private Road in Monroeville Borough*, 205 A.2d 885, 887 (Pa. Super. 1965). Further, it is well settled that the factfinder may "draw all reasonable inferences from the evidence presented."[11] *Rural Route Neighbors*, 960 A.2d at 861.

"In reviewing the report of a board of viewers, a trial court may confirm it or reject it and direct a review." *Benner v. Silvis*, 950 A.2d 990, 994 (Pa. Super. 2008); *accord Monroeville Borough*, 205 A.2d at 887; *see* Section 4 of the General Road Law, 36 P.S. §1832; *see also In re Public Road in Benzinger Township*, 10 A. 35 (Pa. 1887) (trial court is vested with discretion to approve or disapprove the reports of viewers and reviewers); *In re Beigh's Road*, 23 Pa. 302, 305 (1854) (the court had no power to alter the report but was bound to confirm or reject); *In re Herr's Mill Road*, 14 Serg. & Rawle 204 (Pa. 1826) ("The report is the act of the viewers, which the court may either reject or confirm; but they cannot alter it, for then it is no longer the act of the viewers."); *Petition of Supervisors of Mahoning Township, Armstrong County*, 128 A.2d 95, 96 (Pa. Super. 1956) (trial court is

---

[11] This principle has been applied in a variety of cases. *See, e.g.*, *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 652 A.2d 797, 800 (Pa. 1995); *In re Griffis*, 259 A.3d 542, 550 n.10 (Pa. Cmwlth. 2021); *James Corporation v. North Allegheny School District*, 938 A.2d 474, 498 (Pa. Cmwlth. 2007); *Ellis v. City of Pittsburgh*, 703 A.2d 593, 593 (Pa. Cmwlth.1997).

12

vested with discretion to approve or disapprove the reports of viewers and reviewers). "'[A]ppellate review is limited to ascertaining the validity of the [b]oard's jurisdiction, the regularity of proceedings, [and] questions of law[,] and whether the [b]oard abused its discretion.'" *In re Private Road in Speers Boro, II, Washington County*, 11 A.3d 902, 905 (Pa. 2011) (quoting *In re Packard*, 926 A.2d 557, 559 n.2 (Pa. Cmwlth. 2007)).

"An abuse of discretion occurs if the [b]oard's decision shows 'manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or *such lack of support as to be clearly erroneous*.'" *Soska*, 19 A.3d at 1187 n.4 (quoting *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995)) (emphasis added). In other words, an abuse of discretion is established when findings of fact are not supported by substantial evidence. *See id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). "[A]n abuse of discretion may not be found merely because the appellate court might have reached a different conclusion, but requires a showing of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support as to be clearly erroneous." *Paden*, 658 A.2d at 343.

In determining whether substantial evidence exists to support the Board's finding, our review extends to the whole record. *Swamp Road*, 859 A.2d at 530 n.2; *Zeni*, 451 A.2d at 809 n.3 (citing Section 5105(d)(1) of the Judicial Code, 42 Pa. C.S. §5105(d)(1)). However, a "reviewing court may not look beyond the record or review the facts." *Soska*, 19 A.3d at 1187 (citing *Mandracchia*, 576 A.2d at 1183). Further, the reviewing court must examine "the evidence in the light most favorable to the prevailing party below, including the benefit of all inferences

13

reasonably drawn." *Sell v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246, 1250 (Pa. 2001).

Here, the trial court correctly referenced the foregoing standard and scope of review for reviewing the Board's Report, but ultimately deviated from it. *See* Trial Court Opinion, 12/15/16, at 6-7; Trial Court 1925(a) Opinion, 10/18/17, at 28. Instead of examining the record to determine *whether the Board's findings were supported by substantial evidence*, the trial court impermissibly assumed the role of factfinder and made its own findings of fact and conclusions of law based on the evidence presented and substituted its own judgment for that of the Board. The trial court attempted to justify its actions by explaining the purpose was to demonstrate that "it reviewed the entire [r]ecord." Trial Court 1925(a) Opinion, 10/18/17, at 33. Although examination of the whole record is certainly appropriate, *Zeni*, 451 A.2d at 489 n.3, reweighing the evidence and making independent findings is not. *Ordinance No. 91-103*, 642 A.2d at 568. The trial court compounded this error by failing to consider record evidence that supported the Board's findings. The trial court incorrectly surmised that it could not reference or rely upon any facts or evidence in the record that the Board did not expressly reference in its Report. Trial Court 1925(a) Opinion, 10/18/17, at 28-30. However, the Board was not required to reference each item of evidence that supported its findings.[12] *See Kretschmann Farm, LLC v. Township of New Sewickley*, 131 A.3d 1044, 1047 (Pa. Cmwlth. 2016) (the hearing tribunal is not required to address each item of evidence offered in a hearing); *A.P. v. Department of Public Welfare*, 98 A.3d 736, 744 (Pa. Cmwlth. 2014) (administrative law judge not required to address all the evidence that is presented); *Pistella v. Workmen's Compensation Appeal Board (Samson Buick Body*

---

[12] We note that the Reproduced Record itself contains 1,470 pages.

14

*Shop)*, 633 A.2d 230, 234 (Pa. Cmwlth. 1993) (factfinder must "make crucial findings of fact on all essential issues necessary for [appellate] review . . . but is not required to address specifically each bit of evidence offered"). Rather, it was for the trial court to examine the record, in a light favorable to the prevailing parties, to determine whether substantial evidence supported the Board's findings. For these reasons, we conclude that the trial court erred and abused its discretion by exceeding the confines of its scope and standard of review.

Applying the proper review, we examine the Board's Report to determine whether the Board's relevant findings are supported by substantial evidence and whether those findings, in turn, support the determination that the Contested Road is not useless, inconvenient, or burdensome as a matter of law.

### B. Substantial Evidence
### 1. Use

The Board found that the Township retains the Contested Road as a public road to provide area residents with a nature trail to access Skunk Hollow Park. F.F. No. 33. The Contested Road is "used" predominantly by pedestrians and children who use it recreationally to walk, jog, and ride bikes. F.F. No. 54. Most trips went to the end of the macadam "unless proceeding to Skunk Hollow Park." F.F. No. 55. In addition, Paper Mill Resident Theresa Balog uses the Contested Road to access the rear .4 acre of her property, which is intersected by Darby Creek. F.F. No. 16. As for the frequency of the recreational use, the Board found that the Contested Road was used an average of two to three times per day, noting some trips were return trips for the same walker or jogger. F.F. No. 55. The Board found that pedestrian traffic increased shortly before the hearings commenced. F.F. No. 59.

15

The Board's findings pertaining to use are amply supported by the record, which included surveillance monitoring and testimonial evidence. Scott Brehman testified that the use varies by season, with spring and fall being peak usage. F.F. No. 56; R.R. at 477a-78a. The surveillance logs, which monitored activity between September 20, 2012, and October 11, 2012, and then November 19, 2013, and December 5, 2013, showed recreational use of the Contested Road two or three times a day, on average.[13] *See* R.R. at 925a-27a, 939a-70a. Brehmans' residential construction manager and his wife, who lived at the Property during construction, testified to witnessing regular use of the Contested Road by two or three walkers, runners or dog owners, some of whom accessed Skunk Hollow Park. *Id.* at 796a-99a, 813a. Paper Mill Residents testified regarding their personal use and enjoyment of the Contested Road for walking, biking, and accessing the park trails, including frequency of use. *Id.* at 652a-53a, 697a, 719a, 725a, 738a-39a, 749a,

---

[13] This Court observes that the first surveillance period monitored activity during or in close proximity to the Brehmans' efforts to deter neighbors from using the Contested Road. The Board found that the Brehmans actively "sought and attempted to interfere with the access to the [Contested Road]." F.F. No. 58. This finding is supported by Mr. Brehman's own testimony. Mr. Brehman testified that, shortly after purchasing the Property, he undertook measures to stop neighbors from using the Contested Road beginning in March 2012. R.R. at 496a-500a, 506a-08a, 528a, 535a. Mr. Brehman testified that these measures included sending a letter to the neighbors advising them he was blocking off the Contested Road; erecting barricades; posting private property, no trespassing and other deterrence signs ("My dog can make it to the fence in 3 seconds. Can you?"); and verbally warning passersby to stop using the Contested Road. *Id.* at 496a, 506a, 531a, 535a, 1378a. Those efforts continued until sometime after the Board of Supervisors' meeting in March 2013. *Id.* at 529a-30a. Testimony offered by Paper Mill Residents corroborated the deterrence efforts. *Id.* at 660a-63a, 701a-02a, 721a-22a, 755a-56a, 760a, 764a. One witness testified that the Brehmans' deterrence efforts hindered his usage for a period of time because it called into question the public's right to use the Contested Road. *Id.* at 758a. Others expressed reluctance and intimidation to use the Contested Road. *Id.* at 661a, 722a. We further note that the second surveillance period monitored activity near the off-peak season. An inference may be drawn that the surveillance monitoring underreported actual usage. The Board found an increase in pedestrian traffic shortly before the hearings commenced. F.F. No. 59.

16

753a, 842a.  Occasionally, nonresidents utilized the Contested Road for ingress and egress to the park.  *Id.* at 704a, 709a, 754a-55a, 608a.  Even Mr. Brehman testified that he and his family access the park two to three times a month.  *Id.* at 476a.  Other testimony was offered regarding the Contested Road's usefulness in creating interconnectivity among the area's parks, trails, and historic resources.  R.R. at 581a, 602a.  This evidence constitutes substantial evidence that the Contested Road was used by pedestrians recreationally on a daily basis and is useful to the community.

### 2. Burdensome

As for whether the Contested Road is burdensome, the Board found that the cost of policing and maintaining the Contested Road is borne by the Township.  F.F. No. 31.  The Township's maintenance presently includes minimal upkeep of mowing the unpaved portion and snow plowing.  F.F. No. 32.  The Board also found that the Township "may improve" the Contested Road with a vehicle turnaround if the Petition to Vacate is denied and that the contemplated cost for making such road improvements is roughly $130,000.00.  F.F. Nos. 27, 28.  If the Contested Road is not vacated, a turnaround would not be constructed at the terminus of Paper Mill Road unless the property owners in that area petition the Township to build one.  F.F. No. 29.

The Board's findings in this regard are supported by the testimony of Mr. Brehman, the Township's Engineer, Eileen Nelson (Township Engineer), and Chairman of the Board of Supervisors, Joseph Catania (Township Supervisor).  Mr. Brehman testified that the Township's maintenance consists of mowing the unpaved portion and plowing snow from the paved portion of the Contested Road.  R.R. at

17

473a-74a. Mr. Brehman testified that he had not requested the Township to improve the Contested Road. *Id.* at 685a-86a.

Township Engineer testified that the improvements to the Contested Road are not mandatory or necessary to maintain the status quo. R.R. at 419a-20a. She explained that, at the end of the Contested Road, there is a driveway, a portion of which is in the right-of-way. *Id.* at 420a. Vehicular traffic can make a three-point turn at the end of the Contested Road utilizing that right-of-way without disturbing the Property. *Id.* at 421a; *see id.* at 456a. Township Engineer explained that the Township is not required to construct turnarounds on the terminus or dead-end sections of a road unless requested to do so by a property owner. *Id.* at 419a. "Unless it[ is] petitioned by the owners[,] no capital dollars are expended to improve." *Id.* at 421a. Assuming such a request is made, and granted, she estimated that the cost would be $130,000, or less depending on the exact location of the turnaround. *Id.* at 398a, 427a; *see id.* at 634a. Although Brehmans' civil engineer, David Fiorello (Brehmans' Engineer), estimated that the cost would exceed $300,000 to improve the Contested Road, F.F. No. 23; R.R. at 355a, Township Engineer disputed the estimate. R.R. at 397a. Township Engineer explained that Brehmans' Engineer's estimate is based on application of the highest standards, which are applicable to subdivisions and land developments, and that those high standards were not required for, nor even applicable to, the Contested Road. *Id.* at 397a, 399a-400a, 415a-17a. She prepared cost estimates under the applicable standards under the Code, Township ordinances, and Municipal Liquid Fuels Program requirements. *Id.* at 398a, 415a, 429a.

Township Supervisor testified that the Contested Road is inspected every other year. *Id.* at 631a. He further testified that the Township had not received

18

any requests to improve the Contested Road. R.R. at 632a. Regardless of whether the Contested Road is vacated or not, Township Supervisor testified that the Township is considering adding a turnaround "at some point[,] somewhere," but it is waiting for the outcome of this case to decide. *Id.* at 638a; *see id.* at 632a. Township Engineer further testified that no policy decision has been made as to whether the preferred location of such a turnaround was at the Radnor Township border, the end of the existing macadam of the Contested Road, or on the portion of Paper Mill Road preceding the Contested Road. *Id.* at 428a, 430a. Paper Mill Resident Tracy Reller, who lives next door to the Brehmans' Property, testified that, if the Contested Road is vacated, the terminus of Paper Mill Road would be at her property. *Id.* at 708a. The foregoing evidence supports the Board's findings regarding the Township's burden to maintain and the potential costs *if* the Contested Road is improved.

### 3. Inconvenience

As for whether the Contested Road is inconvenient, the Board concluded it was not. C.L. No. 8. Although other access to Skunk Hollow Park exists, the Board found it would be through "other more inconvenient routes." F.F. No. 51. These alternate routes involve driving 1.5 to 2 miles to Radnor Township. R.R. at 650a-51a, 697a. The only asserted inconvenience was to the Brehmans. The Board found that the Brehmans were aware that the Contested Road traversed the Property when they purchased it. F.F. No. 21; R.R. at 437a. Mr. Brehman testified that persons utilizing the Contested Road posed a personal inconvenience to him and his family. R.R. at 458a, 460a, 503a, 530a. Mr. Brehman complained about vehicular traffic speeding and turning around on the Contested

19

Road and disturbing his Property in the process. *Id.* at 455a-60a. Between July 2012 and December 2012, there was an increase in vehicular traffic as a result of a neighboring bridge closure despite road construction signs directing traffic away from the Contested Road. *Id.* at 455a-57a, 928a-937a.

Paper Mill Residents countered with testimony regarding the convenience of using the Contested Road to access the network of trails and parks and not having to drive on public roads to utilize these resources. R.R. at 649a, 651a, 697a, 719a, 738a-39a, 749a. Although they corroborated an increase in vehicular traffic for a limited duration as a result of a neighboring bridge closure, Paper Mill Residents testified that the increase in vehicular traffic was not long lasting once regular commuters realized it was not a viable detour and was not a major inconvenience. *See id.* at 667-68a, 703a-04a, 752a-53a. One Paper Mill Resident described the increase in vehicles as "noticeable," but not "onerous." *Id.* at 705a. Now that the bridge has reopened, the traffic has returned to "normal" and "almost non-noticeable frequency." *Id.* at 672a, 706a. The Board's findings regarding convenience are supported by substantial evidence.

Upon review, the Board's relevant findings regarding the nature and frequency of use and convenience of the Contested Road as well as the maintenance required to continue such use are supported by substantial evidence. Although conflicting evidence was presented, it was for the Board, as the factfinder, to assess the weight and credibility of the evidence presented. As this Court has recognized, "any time one of these cases is the subject of an appeal, there is likely to have been conflicting evidence presented to the board regarding the use of the road." *Leidy Township*, 943 A.2d at 376.

20

## C. Matter of Law

We turn now to determine whether the Board's findings support the conclusion that the Contested Road is not "useless, inconvenient or burdensome" as a matter of law. In determining that the Board erred, the trial court primarily relied on *Leidy Township* and *Swamp Road*, in addition to *Appeal of Likar*, 43 A.2d 388, 390 (Pa. Super. 1945), as authority supporting its decision to reverse the Board's Report and vacate the Contested Road. We address each case in turn.

### 1. *Leidy Township*

In *Leidy Township*, following the denial of a property owner's petition to vacate Route 308, a township road, by the township board of supervisors, the owners requested and were granted the appointment of a board of view. The board weighed conflicting evidence and found, in pertinent part,

> that Route 308 burdens Point Pleasant Farm because it invites trespass thereon by those members of the public wishing to access Kettle Creek and its eastern bank for recreational purposes; that the flowage easement acquired by the Army Corps of Engineers does not accommodate entry by members of the public for recreational purposes; that there is no state game land, camping facilities, or state parks to which Route 308 provides direct access without requiring trespass on the [property owners'] private property; that there are numerous alternative means of accessing Kettle Creek from its western side; and that vacating Route 308 would not be detrimental to the provision of fire and emergency services, as the [property owners] do not continuously reside upon Point Pleasant Farm.

*Leidy Township*, 943 A.2d at 376. The board also found that "the Army Corps of Engineers' access was necessary for public safety to inspect Kettle Creek for flood control." *Id.* Based on these findings, the board concluded that the road was useless,

inconvenient, or burdensome. The board voted to vacate the road, subject to the Army Corps of Engineers' and the Commonwealth's ability to access and maintain governmental land and/or flowage easements for flood protection and prevention purposes. The township filed exceptions to the board's report, which the trial court overruled and confirmed the board's report. *Id.*

On appeal, we concluded that the board's findings did not support its conclusion as a matter of law. *Leidy Township*, 943 A.2d at 377. We opined that vacating the road was contrary to the board's findings that the road was "needed for government access to maintain public land and protect the public safety . . . ." *Id.* "Given the [b]oard's findings that Route 308 is needed for government access to maintain public land and protect the public safety, it simply is not useless, inconvenient [or] burdensome as a matter of law." *Id.* Furthermore, we noted that there is "nothing in the [] Code or the General Road Law, which authorizes a [b]oard of [v]iew to *partially* vacate a road or to vacate it subject to an easement in favor of the parties who need to use it." *Id.* (emphasis in original). Thus, we reversed the order of the trial court. *Id.*

The trial court likened *Leidy Township* to the case here because "the evidence of recreational use for walking, jogging, hiking, or biking of the [Contested Road] does not create a necessity for public access, especially when there is an alternate route to access Skunk Hollow Park." Trial Court 1925(a) Opinion, 10/18/17, at 42. The trial court explained that "[i]n *Leidy Township*, the road was necessary for a public safety reason . . . ." Trial Court 1925(a) Opinion, 10/18/17, at 42. However, the test here is not whether the road is "necessary." Whether "such road is necessary" is the proper test for a request to open a private road under the Section 12 of General Road Law, 36 P.S. §2732, because the opening of a private

22

road over the land of another is in the nature of eminent domain.[14] *Soska*, 19 A.3d at 1188; *Application of Little*, 119 A.2d 587, 589 (Pa. Super. 1956); *see also In re Vacation of Wentz Road*, 5 Pa. D. & C. 2d 727, 731 (1956) (the moving party need only show uselessness or inconvenience and need not show lack of necessity for the public convenience).  As stated above, the proper test to vacate a road is whether the road is useless, inconvenient, or burdensome.  *Swamp Road*, 859 A.2d at 532; *see* 36 P.S. §1981.  The test to vacate a road is much broader than the test to open a road because the road is already in existence, and no taking is implicated.  If a road is necessary, it is, by definition, useful.  *See Leidy Township*.  However, the converse is not necessarily true.  Here, the Contested Road is useful for recreational use.

Furthermore, the facts favoring vacation of the road in *Leidy Township* are absent here.  In *Leidy Township*, there was no state game land or public park to which the road provided access without trespassing on the landowners' property.  Here, the Contested Road leads to and connects to Skunk Hollow Park and an integrated system of park trails, which further supports the recreational use.  Thus, we conclude that *Leidy Township* does not compel the vacation of the Contested Road.

### 2. *Swamp Road*

Next, *Swamp Road* involved an unpaved portion of Swamp Road, a public road that serviced a Department of Conservation and Natural Resources'

---

[14] In addition, we note that, under a prior version of Section 2304 of the Code, the General Assembly authorized the board of supervisors to vacate a road if, in the supervisors' judgment, it was necessary.  *See former* Section 1101 of the Code, *formerly* 53 P.S. §66101 of the Code.  In 1995, the General Assembly reenacted and renumbered Section 1101 as Section 2304 and eliminated the "necessary" language.  *See Bubb v. Blanchard*, 740 A.2d 1196, 1198 (Pa. Cmwlth. 1999).

(DCNR) conservation area. The road traversed a heavily wooded and steeply sloped area. *Swamp Road*, 859 A.2d at 529. Citing the road's poor condition and infrequent use as well as a plan to incorporate the road into an existing nature trail system, DCNR sought to vacate a 0.7 mile portion of Swamp Road. Following the denial by the township board of supervisors, DCNR petitioned the court for the appointment of a board of view. The board of view conducted an evidentiary hearing, wherein DCNR presented evidence concerning the road's dilapidated condition, including expert testimony that the narrow width of the road made its use inconvenient and dangerous and that upgrades to the road would cost several hundred thousand dollars. *Id.* at 532 n.5. The township countered with evidence that the road was used by hikers, bikers, handicap hunters, and emergency vehicles on a regular basis. *Id.* at 529. The board weighed the conflicting evidence and determined that the road should be vacated, upon finding it was "useless, inconvenient, and burdensome." *Id.* at 530. The township filed exceptions. The trial court denied exceptions and ordered the road vacated. *Id.*

On appeal, we examined the record and determined that "DCNR produced ample evidence" as to the road's condition and the cost to repair "to conclude that the 0.7 mile portion of Swamp Road was useless or inconvenient or burdensome." *Swamp Road*, 859 A.2d at 532. "Although the [t]ownship emphasize[d] conflicting evidence," including recreational and emergency use, "*determining what weight to give evidence* [*was*] *an issue for the fact*[]*finder, not the appellate court*." *Id.* (emphasis added). Thus, we affirmed. *Id.*

The trial court likened *Swamp Road* to the case here on the basis that the evidence regarding the cost to improve and maintain the Contested Road, as well as the lack of need for vehicles to travel thereon, "sufficiently outweighed the

24

evidence as to minimal recreational use." Trial Court 1925(a) Opinion, 10/18/17, at 40. However, it was not for the trial court, as the reviewing court, to weigh the evidence presented. *Swamp Road*, 859 A.2d at 532.

Here, the Board weighed the evidence and determined that the pedestrian and recreational use outweighed the other evidence presented. As discussed above, the Board's findings of continued recreational use are amply supported by the record and support the conclusion that the Contested Road is not useless. Although there was evidence challenging the frequency of the use, the evidence established that the Contested Road was used for recreational purposes on a daily basis.

Furthermore, unlike the road in *Swamp Road*, the Board did not find that the Contested Road was dilapidated, inconvenient, or dangerous, but could continue to be used for recreational purposes and to access the Property without improvement. Township Engineer testified that road improvements were not necessary or mandatory to maintain the status quo. R.R. at 419a-20a. Paper Mill Residents testified that the Contested Road was suitable for their recreational use in its current condition. *See id.* at 103a-04a, 672a, 740a, 759a. Although evidence was presented regarding the *potential* costs to improve the Contested Road, the Board did not find that such costs were required because there is no need for vehicles to be able to travel over the area requested other than to access the Property. F.F. Nos. 27, 30. Although the Board found that the Township "may improve" the paved portion of the Contested Road if the Petition to Vacate is denied, it did not find that such improvements were required. F.F. No. 27.

Critical to our analysis here, vacating the Contested Road would not eliminate the Township's burden regarding potential improvement costs. Three

25

residences, including the Brehmans' Property, use the portion of Paper Mill Road, after the split from Paper Mill Lane, for vehicular access. F.F. No. 34. Even if the Contested Road is vacated, the Board found that the Township may face potential improvement costs to construct a turnaround at the newly formed terminus to Paper Mill Road upon petition from the property owners. F.F. No 29; *see* R.R. at 632a, 638a. Because the potential costs to improve the terminus of Paper Mill Road with a turnaround exist regardless of whether or not the Contested Road is vacated, we cannot conclude that the use or convenience of the Contested Road is "greatly overbalanced by the cost" as a matter of law. *Cf. Mahoning Township*, 128 A.2d at 96.[15] On the contrary, the Board's findings in this case support the legal determination that the Contested Road is not burdensome.

### 3. *Likar Appeal*

Lastly, in *Likar Appeal*, the viewers reported that the road in question had become useless, inconvenient, and burdensome by reason that

> it is impassable at certain periods of the year; has insufficient clearance under an overhead railroad crossing; has a bridge condemned for certain load limits; has dangerous railroad grade crossings, and to be placed in proper condition, would require the expenditure of considerable sums of money, and for the further reason that the State Highway Department has provided a good and sufficient alternate route.

---

[15] *Mahoning Township* concerned the vacation of a 1,500-foot portion of the road, which constituted a loop through a farmer's property. 128 A.2d at 96. This portion of the roadway was mainly used for the purpose of aiding the farming operations on the property. *Id.* The Superior Court noted that, although it will be necessary for the farmer to travel a longer distance to reach the township roadway system beyond his farmland, "this inconvenience is greatly overbalanced by the cost that would be entailed in reconstruction and upkeep." *Id.*

43 A.2d at 389. Although the closure of the road would cause some inconvenience, the Superior Court opined "mere inconvenience to some of the traveling public is not sufficient to prevent a vacation." *Id.* at 390. The Court determined that "other valid factors outweigh such inconvenience." *Id.*

The trial court likened this case to *Likar Appeal* because alternate access to the park system is available. Although other access to Skunk Hollow Park exists, the Board found it would be through "other more *inconvenient* routes." F.F. No. 51 (emphasis added). These alternate routes involve driving 1.5 to 2 miles to Radnor Township. R.R. at 650a-51a, 697a. Unlike the road in *Likar Appeal*, the Contested Road is not in poor or dangerous condition but may continue to be used for its present purposes without improvement. As discussed above, the only asserted inconvenience was to the Brehmans. Because a proper interpretation of the inconvenient provision favors the public interests, as opposed to private interests, *see* 1 Pa. C.S. §1922(5), the Brehmans' evidence of personal inconvenience was insufficient to demonstrate inconvenience to support vacation of the Contested Road. Clearly, the public interest, which is served by walkable access to a network of trails and public parks, would not best be served by the vacation of the Contested Road. Thus, the Board did not err in determining that the Contested Road was not inconvenient.

## IV. Conclusion

Upon review of the Board's findings, supporting evidence, and pertinent caselaw, we conclude that the Board did not err or abuse its discretion in determining that the Contested Road was not useless, inconvenient, or burdensome

27

and denying the Petition to Vacate.  Accordingly, we reverse the order of the trial court and reinstate the Board's Report.


_____
MICHAEL H. WOJCIK, Judge


Judge Covey did not participate in the decision of this case.
Judge Fizzano Cannon did not participate in the decision of this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Vacation of a Portion of : **CASES CONSOLIDATED**
Paper Mill Road, Newtown Township, :
Petition of Scott Brehman and :
Margaret Brehman : No. 701 C.D. 2017
:
Appeal of: Newtown Township :


In Re: Vacation of a Portion of :
Paper Mill Road, Newtown :
Township, Petition of Scott :
Brehman and Margaret Brehman : No. 730 C.D. 2017
:
Appeal of: Jennifer F. Anderson, :
Ross D. Anderson, John Balog, Jr., :
Theresa A. Balog, Valerie Boyko, :
Henry S. Bryans, Martha B. Bryans, :
Maureen A. Cherry, James Cox, :
Monica Cox, Gary S. Coyle, Laurena :
S. Coyle, James B. Francis, Jr., Sally :
M.G. Francis, Brandon J. Koch, Diane :
M. Koch, Janet Krevenas, Christopher :
D. McIsaac, Linda I. McIsaac, John W. :
Newman, Lansdale S. Newman, David :
M. Reller, Tracy M. Reller, Paula :
Rothermal, Rodman S. Rothermal, :
Paul H. Saint-Antoine, Susan M. :
Saint-Antoine, Robert S. Winter, Jr., :
and Vicki L. Winter :


In Re: Vacation of a Portion of :
Paper Mill Road, Newtown Township :
Petition of Scott Brehman and :
Margaret Brehman : No. 1300 C.D. 2017
:
Appeal of: Newtown Township :

In Re: Vacation of a Portion of       :
Paper Mill Road, Newtown              :
Township, Petition of Scott Brehman   :
and Margaret Brehman                  : No. 1311 C.D. 2017

Appeal of: Jennifer F. Anderson,      :
Ross D. Anderson, John Balog, Jr.,    :
Theresa A. Balog, Valerie Boyko,      :
Henry S. Bryans, Martha B. Bryans,    :
Maureen A. Cherry, James Cox,         :
Monica Cox, Gary S. Coyle,            :
Laurena S. Coyle, James B. Francis, Jr., :
Sally MG Francis, Brandon J. Koch,    :
Diane M. Koch, Janet Krevenas,        :
John W. Newman, Lansdale S.           :
Newman, Christopher D. McIsaac,       :
Linda I. McIsaac, David M. Reller,    :
Tracy M. Reller, Rodman S.            :
Rothermal, Paula Rothermal,           :
Paul H. Saint-Antoine, Susan M.       :
Saint-Antoine, Robert S. Winter, Jr., :
and Vicki L. Winter                   :

# O R D E R

AND NOW, this 20th day of April, 2023, the order of the Court of Common Pleas of Delaware County, dated May 23, 2017, is REVERSED, and the Report of the Board of View, dated February 3, 2016, is REINSTATED.

_____
MICHAEL H. WOJCIK, Judge